

**ZIMMERMAN**
**A S S O C I A T E S**
**O F   F L O R I D A**

**George W. Zimmerman**
Partner, Architect, Building Inspector

**Christopher Zimmerman**
Partner, Building Inspector, Plans Examiner

**Andres Correa**
Associate, Engineer, Building Inspector

**David Zimmerman**
Associate, Building Inspector

December 2, 2020

Christopher J. Bilecki, Esq.
Paul | Knopf | Bigger
840 S Denning Dr, STE 200
Winter Park, Florida 32789

re:     Preliminary Report
        Estate of Dorothy Vanleeuwen

Dear Mr. Bilecki,

I, Christopher Zimmerman, specifically have been retained to provide opinions concerning established construction and maintenance Codes, regulations, and standards as they existed and the manner in which they should be considered, during the evaluation of Dorothy Vanleeuwen's accident.  I am a Florida Licensed Building Inspector and Florida Licensed Plans Examiner.  I also have certification as a Walkway Auditor, an Accessibility Building Inspector and Plans Examiner and a Fire Safety Inspector.  I have personal knowledge of the matters contained in this report, based upon my education, training, experience, licensing, and my services as an Expert.

I have been court qualified as an expert on issues concerning the construction and maintenance of buildings and structures, in compliance with building laws, codes, and regulations, including the safety of walkway surfaces.  My resume of qualifications, education, and training are contained in my Curriculum Vitae, which is attached hereto, as Exhibit #1.  Exhibit #2, contained herein, is my deposition and trial list.

Post Office Box 212036, West Palm Beach, Florida  33421 • (561) 791-4884 • Fax (561) 791-3093
353 Window Rock Drive, Wellington, FL 33414 • 12765 W. Forest Hill Blvd., Suite 1305, Wellington, FL 33414

BUILDING CODE COMPLIANCE •  CONSTRUCTION DEFECTS  •  PREMISES MAINTENANCE & SAFETY

I have examined the conditions of Ms. Vanleeuwen's accident site, concerning the liability for the December 11, 2019 accident.  The conditions of the site have been evaluated with respect to compliance with Building Codes and Standards, and the norms of good construction and maintenance practice.  The responsibility of the owner is specifically addressed herein, as well as their responsibility with respect to the conditions at the site.  My evaluation has allowed me to formulate preliminary opinions, stated within a reasonable degree of professional certainty, that a cause of the subject accident was the condition of the accident site.

Information related to the accident was obtained during a telephone conversation with Mr. Bilecki, and his follow-up correspondence.  As I understand it, on December 11, 2019, Ms. Vanleeuwen was seated at booth, within the bar area of the Chili's Restaurant, located at 4650 13th Street, St. Cloud, Florida.  As she was attempting to egress the bench seat at her table, she did not perceive the presence and location of the step at the base of the bench seat and table.  The unexpected change in elevation caused Ms. Vanleeuwen to fall.

I conducted an examination of the accident site on October 20, 2020.  Exhibit #4, attached hereto, contains a copy of the photographs I took during that examination.  Exhibit #5, contained herein, is the property information that was obtained from the Osceola County Property Appraiser's Office.  The City of St. Cloud Building permit information, for the original construction is enclosed herewith, as Exhibit #6.

It is my understanding that the Plaintiff has made a claim that the Defendant, due to their violation of applicable Florida Statutes, Building Codes, local Ordinances and/or Standards has caused them damage.  To assist in asserting that claim, included herein is a recapitulation of provisions of law, codes, regulations and standards that in my training and experience as a licensed building inspector, would have jurisdiction at the time of the subject accident, over the premises, and the parties involved.  Such testimony will be provided to the Court to assist in its ruling on the Plaintiff's Motion for Judicial Notice of Applicable Law.  It is intended that upon the Court's recognition of a provision, it will be utilized in testimony provided to the Jury.

In order to determine the compliance of the accident site, I reviewed the property records, permitting records, and the various Codes and regulations that have

jurisdiction over it.  Accordingly, I reviewed the City of St. Cloud Code of Ordinances, the International Property Maintenance Code, the Florida Building Code, the Florida Fire Prevention Code and the incorporated NFPA 101, Life Safety Code and the ASTM, F1637, Standard Practice for Safe Walking Surfaces.  Relevant excerpts have been included herein as Exhibit #7.

The seating provided in the bar area of the restaurant consisted of many different seating options. The only seating provided at an elevated platform, were the three booths located along the right side of the bar.  These booths required individuals to negotiate a single step riser to access/egress the booth, on the elevated platform.  The single step transition varied between 6" and 6-⅛" in height.  The leading edge at the step presented an excessive rounding, as seen in the photographs of exhibit #3.  The rounding at the leading edge was in excess of 1-½".  Such rounding at a leading edge of treads/landings are prohibited and present a dangerous condition that can allow a user's foot to slip off.

The leading edge of the step, was not marked or demarcated in contrast to it surroundings, it was same coloration as identified in the photograph of Exhibit #3.  The step landing/platform, its leading edge, the riser and the bottom landing all contain a worn, dark reddish concrete surface.  The failure to delineate the leading edge and its rounding helps to conceal its existence along the floor.  The table surface and its shadowing also help to conceal its presence and location.  From the viewpoint of a booth occupant, the step is total hidden from view when exiting the booth, unless you look out beyond the end of the table and straight down.  Furthermore an individual view from the booth and upon exiting would be of other tables and booths that not on an elevated platform surface.

The installation of the step at that location was improper and noncompliant.  There was no need for the elevated booth to exist, and its condition was dangerous.  The owner failed to make the single step transition readily apparent to users, or to provide any warning of its existence.  The construction of the elevated booth and step was such that it did not allow for adequate warning or viewing of the condition, nor adequate space to safe negotiate the change in level.  At the time of the accident, the aforementioned dangerous conditions combined to create a trap for Ms. Vanleeuwen, as she attempted

to egress the dining table.  The owner was required to provide a compliant egress from the table, and to perpetually maintain the safety and compliance of the route.

Section 1001.1 of the Florida Building Code requires that buildings be provided with a continuous and unobstructed path of travel from any occupied portion of the building, and that the components of the route comply with the means of egress requirements of the code.  Section 1003.2.7 requires that a change in level not exceeding 21″ in height must be made by a compliant ramp or stair.  When made by stair that the minimum tread depth be 13″ and the presence and location of the step be made readily apparent. If further states that where a change in level is less than 12″ in height, as was the condition at the accident site, that it be made by a ramp.  Section 1007 provides the criteria for stair construction.  Section 1007.4 requires a landing be provided for each stair that is at least the width of the stair, but no greater than four feet.  Section 1007.5 require that handrail be provided at a stair.  The subject step failed to provide a compliant unobstructed landing or handrails for Ms. Vanleeuwen's use.  Section 1019.8 requires that in a Group A Occupancy, such as this Chili's restaurant, that a flight of stairs containing three or fewer risers not be used and that such transitions be made by a compliant ramp.  Additionally, Section 1019.10.5.3 identifies that a contrasting marking stripe be provide at the leading edge, so that it is readily apparent in descent. The step at the elevated booth failed to provide compliant construction in accordance with the Florida Building Code.

Section 1001.3 of the Florida Building Code requires that egress routes be maintained in accordance with the Florida Fire Prevention Code, which incorporates the NFPA 101, Life Safety Code.  Section 1.3.1 indicates that the Code has jurisdiction.  Sections 4.5.3.2, 4.5.8, and 7.1.10.1 require the continued maintenance of an impediment-free means of egress.  Section 7.1.7.2.4 requires that the presence and location of each step connecting changes in level of less than 21″ be made readily apparent to users.  Section 7.2.2.3.5 requires that tread and landing nosing not present rounding or beveling that exceeds ½″ in horizontal dimension.  Section 7.2.2.4.1.1 requires that a stair be provided with handrails.  The noncompliant construction and maintenance of the subject site, with the provisions of the Life Safety Code, made egress from Ms. Vanleeuwen's location dangerous, but the danger was not readily apparent.

In response to the numerous pedestrian accidents that occur along walking surfaces, ASTM International has established the Standard Practice for Safe Walking Surfaces F1637. Section 1.1 indicates that the Standard applies to the design, construction and minimum maintenance of walking surfaces. Section 5.1.1 requires that walkways be flush and even, and where they cannot be made flush, Section 5.2 requires that changes in level greater than ½", be transitioned by means of a ramp or stair, that complies with applicable regulations. Section 7.1.2 requires that step leading edge be adequately demarcated, and readily discernible. Section 7.2 requires that single step transitions be avoided, and where they cannot be avoided, that obvious visual cues be provided, to facilitate improved step identification. The construction in place at the time of the accident did not make the change in level readily apparent.

The subject route provided for Ms. Vanleeuwen's use was required to be maintained in a safe and compliant condition as required by the City of St. Cloud Code of Ordinances. Section 10-33 of the St. Cloud Code of Ordinances requires compliance with the International Property Maintenance Code (IPMC). Sections 101, 102 and 108 of the IPMC require that buildings and structures be maintained by the owner to ensure the health, safety and warfare of the public. It requires that egress route be code complaint and maintained in a safe condition.

This report together with its exhibits is preliminary. Further deposition information and discovery, yet to be obtained, will surely expand inquiry and may lead to additional specific conclusions or amplification of those presented herein.

Zimmerman Associates of Florida

Christopher Zimmerman
State Licensed Building Inspector

1



**ZIMMERMAN**
**ASSOCIATES**
**OF FLORIDA**

George W. Zimmerman
Partner, Architect, Building Inspector

Christopher Zimmerman
Partner, Building Inspector, Plans Examiner

Andres Correa
Associate, Engineer, Building Inspector

David Zimmerman
Associate, Building Inspector

## CHRISTOPHER M. ZIMMERMAN
## CURRICULUM VITAE
### February 20, 2012

Christopher Zimmerman is a partner in Zimmerman Associates of Florida, with George Zimmerman. The Partnership provides research and consultations in the areas of safety, design, development, construction, building code compliance, construction regulations and maintenance of premises. Christopher Zimmerman undertakes the assignments of the partnership as a sole proprietor, Christopher Zimmerman, Building Inspector and Plans Examiner.

Christopher Zimmerman is a Florida State Licensed Building Inspector (BN3014) and a Florida State Licensed Plans Examiner (PX1736). As a licensed Building Inspector, and Plans Examiner, Mr. Zimmerman has all necessary qualifications to consult on the permitting process, and to provide opinions with respect to the preservation of public safety, through the proper application of building codes, regulations and ordinances. He has over 16 years experience examining the permitting and construction process, including construction safety practices. He is qualified to determine responsibility for construction accidents, as dictated by the construction documents, building codes, permitting affidavits, and the application of code incorporated standards (OSHA, ANSI, ASTM, IES, etc.). Additionally, Mr. Zimmerman has been court qualified to provide testimony in this field.

Mr. Zimmerman received a Bachelors of Science from Florida State University, in Criminology. In addition to his college education his investigational skills and techniques were further enhanced, during an internship with the Florida Department of Insurance, Fraud Division, in 1995.

While Mr. Zimmerman has had a lifelong involvement in the architectural and development practice conducted by his father, his full-time involvement did not occur until after college, in 1996. Mr. Zimmerman utilizes his expertise in the application of the Florida Building Code, the Standard Building Code, the South Florida Building Code, the EPCOT Code, the Florida Fire Prevention Code and the NFPA 101, Life Safety Code, and all other building regulations that have jurisdiction, in accordance with local law and/or State Statutes, including various agency regulations that have jurisdiction

Post Office Box 212036, West Palm Beach, Florida 33421 • (561) 791-4884 • Fax (561) 791-3093
353 Window Rock Drive, Wellington, FL 33414 • 12765 W. Forest Hill Blvd., Suite 1305, Wellington, FL 33414

BUILDING CODE COMPLIANCE • CONSTRUCTION DEFECTS • PREMISES MAINTENANCE & SAFETY

under the auspices of the Florida Administrative Code.  Mr. Zimmerman also maintains memberships with the International Code Council (ICC), the Building Officials Association of Florida (BOAF) and the American Society for Testing and Materials (ASTM).  During the past 16 years, Christopher Zimmerman has undertaken a number of assignments including training, education, and certification programs that have broadened his expertise in a manner that has allowed him to become a very effective Code specialist.

## EDUCATION, LICENSES, CERTIFICATIONS & ORGANIZATIONS

The following provides a list of Education, Licensing, Certifications and Organization Memberships that Mr. Zimmerman has either undertaken, qualified for, or have been a part of during the past 20 years.

- Florida Department of Insurance - Fraud Division - Internship
- Florida State University - Bachelor of Science - Criminology
- Southern Building Code Congress International / International Code Council
    - Building Inspector
    - Building Plan Examiner
    - Accessibility Inspector/Plans Examiner
- Florida DBPR - Building Code Administrators and Inspectors Board
    - Florida Licensed Building Inspector BN 3014
    - Florida Licensed Plans Examiner PX 1736
- Florida Department of Community Affairs and Florida Building Commission
    - Instructor for the Florida Building Code Core Course for building professionals
       (Architects, Engineers, Contractors and Building Inspectors)
- United States Department of Labor
    - OSHA Trainer for Construction Industry
- Florida Concrete and Product Association
    - Concrete Masonry Inspector
- ASTM F13 Committee on Pedestrian/Walkway Safety and Footwear
- The National Floor Safety Institute
    - Walkway Auditor Safety Specialist
- State of Florida Department of Education
    - Educational Facilities Inspector Certification

## PROFESSIONAL DEVELOPMENT AND CONTINUING EDUCATION COURSES

Below is a partial list of professional development and continuing education courses for Architects, Engineers, Building Inspectors, Contractors and the building industry that have been undertaken by Mr. Zimmerman.

SBCCI Building Inspector Training Course • Construction Law • Premises Liability • Architecture and Wood • Radon Design Standards • Wood Truss Construction • Traffic Planning • Shear Walls and Diaphragms • Signage & Graphic Design • Florida Accessibility Code for Building Construction • Building Codes and Design for High Winds • Engineered Wood Products • Interior & Exterior Finishes • Building Codes and Design for High Winds • FDOT Design Update Training • Connections for High Wind Resistance • Neo-traditional Planning Workshop • Through Wall - Water Intrusion • Shear Walls and Diaphragms • Architecture and Wood • Wood Interior and Exterior Finish • Connections for Achieving High Wind Resistance Building Code and Design for High Winds Engineered Wood Products • Masonry Constructions Inspection Certification Workshop • Public Educational Facilities Construction Workshop - SREF • Walkway Auditor Training Program - National Floor Safety Institute • Advantage of Wood in Home Construction• Engineered Wood Products • Code Compliance to Resist Wind Importance of Bearing and Truss Design • ADA Accessibility Courses • Wood Building and Building Codes • Fundamentals of Engineered Lumber Products Truss Joint Institute • Construction Law • Healthcare Flooring • Florida Building Code Administration • BOAF Florida Accessibility Code • Structural Requirements of the Florida Building Code • Florida Building Code and General Contractors • Means of Egress • Professional Responsibilities for Construction Industry• Trainer Course in OSHA for the Construction Industry • US Dept. of Labor Light Gauge Steel Framing - Connection, Specification and Testing • FDOT Statewide Transit Accessibility and Facility Design Course • FDOT 2011 Update Training • Florida Building Code Administration and Inspector Overview and Update • ADA Enforcing the Architectural Barriers Act • ADA Accessible Doors and Maneuvering Clearances •  Florida Building Code Product Approval/Laws & Rules • Existing Building Code  • Florida Laws and Rules • Florida Building Code Update • Design and Sustainability • The Ins and Outs of Egress Doors • Proper Flashing and Installation of Windows • Designing to Meet LEED Requirements • Florida Building Commission 2012 Florida Accessibility Code and Law Workshop • BOAF Means of Egress • A Journey Through Florida Building Construction Laws and Rules • Ethics in Government Agencies • BOAF Mitigation Techniques, Inspection • 2010 Significant Code changes to Florida Building Code • Introduction to the FDOT Driveway Information Guide

## RECENT CONSULTATIONS

The following provides a small sampling of the types of engagements on which Mr. Zimmerman has provided consultation services in the recent past.

- The review of construction documents in accordance with applicable building codes and construction regulations.

- The inspection of construction activity during and after its conclusion for compliance with the approved construction drawings and building code compliance.

- Numerous consultations on the proper construction and maintenance, or lack thereof, for stairs.

- Numerous consultations on the proper construction and maintenance, or lack thereof, for ramps.

- Evaluation of walkways and their surfaces, including their design, construction and maintenance.

- Change in elevation along walkway surfaces, including but not limited to improper installations and maintenance of pedestrians routes and parking lot surfaces (i.e. wheel stops, speed bumps/humps).

- Improper construction and maintenance of buildings and structures that ultimately resulted in structural failures.

- Illumination requirements for pedestrian areas and parking lots, in accordance with the building codes, ordinances and industry standards.

- Construction safety practices including the supervision and maintenance of construction site activity, as required by the building codes, ordinances, OSHA and other industry regulations.

- City, County and State regulations for Contractor Licensing.

- The permitting requirements for all building construction activity, as required by State, Counties and Municipalities, including the requirements governed by the local zoning regulations.

- The permitting, safeguarding and construction activity for right-of-ways, as regulated by Engineering and Public Works Departments and the Florida Department of Transportation, including their regulations.

- The improper construction and maintenance of sidewalk surfaces including mis-alignments, drainage, landscaping and underground/overhead obstructions.

- The improper construction and maintenance of drainage structures, retention area, ponds and canals in accordance with the County and City regulations, water management districts and state regulations.

- Utility facilities, including their clearances and construction regulations, location, permitting, County/City regulations, Franchise Agreements and compliance with the required regulations, including those of the National Electrical Safety Code.

- Review construction documents and building facilities for compliance with the Americans with Disabilities, including the ADA Guidelines, Architectural Barrier removal and the Florida Accessibility Code for Building Construction.

- Inspection of school facilities in accordance with Florida Statutes and applicable building codes, including the State Requirements for Educational Facilities (SREF)

## WORK EXPERIENCE

**ZIMMERMAN ASSOCIATES OF FLORIDA (2000 - Present)**
**(f/k/a ZIMMERMAN ASSOCIATES OF TAMPA)**

- Responsible for the operation of the partnership, Zimmerman Associates of Tampa, formed in April 2000. Responsible for the consulting activity of the partnership for the past eleven years while located in the Tampa Bay area. In September of 2011, the partnership was relocated and renamed to Zimmerman Associates of Florida to better serve its clientele throughout the state. The partnership continues to provide research, inspection and expert witness services to owners, the legal profession and their clients, on matters concerning construction activity, property damage and personal injury.

**ZIMMERMAN ASSOCIATES  (1992 to 2011)**
CONSTRUCTION & BUILDING CODE INVESTIGATOR / ANALYST
- Responsible for preparing reports for Code violations, design deficiencies and construction defects.
- Responsible for Building Code investigation and research for various clientele.
- Research and review of public Permit Records and documents.
- Responsible for site inspections, for Code compliance with respect to the Building Code, and City/County Ordinances.
- Evaluation of construction requisitions and provisions of limited management services for site construction and permitting compliance, as an owner's representative.
- Handle general correspondence and compile reports dealing with all aspects of Building Code and Accessibility Code compliance.

## CONCURRENT WORK ACTIVITIES (1995-2005)

### VILLAGE OF WELLINGTON - BUILDING & ZONING DEPARTMENT
BUILDING INSPECTOR
- Subcontracted with the Village of Wellington through O'Donnell, Naccarato, Mignogna & Jackson  - Structural Engineering Firm.
- Responsible for conducting inspections of structures in accordance with the Building Code, Palm Beach County Amendments to the Code, NFPA 101 Life Safety Code, The Florida Accessibility Code and Local Codes and Ordinances having jurisdiction.
- Undertook thousands of individual inspections, issued final approvals, Stop-Work Orders and Notices of Violation.

### ST. LUCIE COUNTY BUILDING & ZONING DEPARTMENT
PLANS EXAMINER & BUILDING INSPECTOR
- Review plans for compliance with the Standard Building Code, as incorporated by St. Lucie County, the NFPA 101 Life Safety Code and The Florida Accessibility Code, in all areas of construction.
- Detect structural & other faults, appraise for quality of construction & physical depreciation.
- Issue Stop-Work Orders and Notices of Violations
- Knowledge of Code to assist public.
- Comparative review of plans and specifications, to check for compliance of construction in progress.
- Report and document all non-compliant construction.

### EXPERT CONSULTANTS ASSOCIATED, INC. -
BUILDING PROFESSIONAL CONTINUING EDUCATION
- Provide Florida Building Code Core Course
- Edit industry publications for inclusion in provided courses, and the preparation of compliance tests.
- Responsible for Advertising and Marketing Strategies, for Continuing Education Courses for Architects, Building Inspectors and Building Professionals.
- Responsible for distribution and follow-up for all correspondence course offerings.
- Aided in the preparation and State Certification of the Seminar and Correspondence Courses, offered by Expert Consultants Associated, Inc.

### FLORIDA DEPARTMENT OF INSURANCE - FRAUD DIVISION
INTERNSHIP
- Responsibilities included correspondence with various state and national agencies.
- Surveillance and apprehension of individuals suspected of Insurance Fraud.
- Gathering evidence and preparing reports to be filed with the Department of Insurance and the State Attorney's Office.

2

**DEPOSITION & TRIAL TESTIMONY**
Christopher Zimmerman
2016-2020

Swagart v. Lowes - Tampa - Federal
Johnson v. City of Riviera Beach - Palm Beach
Francisco v. The Enclave at Crown Park Condominium Association, Inc. - Palm Beach
Toombs v. Siesta Bay RV Resort - Lee
Haight v. Bricks of Pensacola - Escambia
Worman v. Whale's Rib - Broward English v. Lee County - Lee
Sena v. Atlantic Hotel - Broward
Simpson v. Magic Burgers, LLC - Ocala - Federal
Sher v. City of Delray - Palm Beach
Franklin v. Stursberg & Jervis - Indian River
Carbonell v. The Big Cheese - Miami Dade
Griffin v. Palm Beach County - Palm Beach
Savva v. 5210 South Orange Avenue, et.al. - Orange
Suchoff v. Bre/Baton Opertating Lessee, LLC - Palm Beach
Jordan v. Speedway - Pinellas
Neloms v. Mimai Property Group, Ltd., et.al. - Miami Dade
Wummer v. City of Lake Park, et. al. - Palm Beach
Shepherd v. The Bait House - Pinellas
Aleska v. Lester's Diner of Ft. Lauderdale - Broward
Cordero v. Fun Coast Properties North, Inc., et.al. - Volusia
Grossman v. Loews Portofino Bay Hotel - Orange
Mantovani v. Emerald Pointe Condominium Assoc., Inc - Charlotte
Rawls v. Hecht Bird Road Properties et.al. - Miami Dade
Knowles v. City of Plantation - Broward
Guttenberg v. Lexington Homes Estate - Palm Beach
Gonzalez v. 94th Aero Squadron - Miami Dade
Echevarria v. Lennar Homes, LLC - Miami Dade
Mazur v. US Blinds Fabrications, Inc. et.al.
Assadi v. Bahama House - Volusia
Asencio v. Patio West One Condo Assoc. et.al. - Miami Dade
Krueger v. MPN LLC & Strumpf, Inc. - Hillsborough
Hernandez v. City of Weston - Broward
Capo v. Daymark Properties Realty, Inc - Broward

Discher v. Kohl's - Hillsborough
Colimon v. Pierre - Palm Beach
Geary v. Morgan Real Estate, et.al. - Palm Beach
Welch v. GSH Holly - Palm Beach
Smathers v. Crystal Seas Limited Partnership - Citrus
Devine v. Mobile Home Park & Sales - Palm Beach
Cash v. City of St. Petersburg, et.al. - Pinellas
Howe v. Equity Residential Management, LLC, et al. - Orange
Noe v. The Ben Tobin Companies, LTD., et.al. - Pinellas
Mayer vs. City of Daytona Beach - Volusia
Smith v. Calvary Chapel of Ft. Lauderdale, et.al. - Broward
Bruce.Boltwood v. Manatee - Manatee
Hershon v. Ruth Viner Holdings, Ltd. - Palm Beach
Willett v. Walt Disney Parks - Orange
Reynolds v. Atlantic Housing Foundation, Inc.- Pinellas
Angell v. La Mesa RV Center, Inc. - Palm Beach
Bryer v. Port St. Lucie Donuts, LLC, et.al. - St. Lucie
Morales v. Dolphin Mall - Miami Dade Federal
Mascola v. Shin Sung Group - Broward
Conrad v. Embassy Suites - Orange
Wilson v. Caribbean Shipping Solutions, et. al. - Miami Dade
Moore v. RWJ-Magnolia, LLC, et.al. - Orange
Andresen v. Boynton Carolina Ale House - Palm Beach
Locastro v. V.G. Organization - Pinellas
Heaton v. River City Brewing Company - Duval
Judka v. Lakeside Operating Partnership, L.P. et al. - Osceola
Ramos v. Wal-Mart Stores, Inc. - Broward
Vinson v. The Bricks of Ybor, LLC - Hillsborough
Claudio v. Sunland Distribution of Florida, Inc. - Polk
Williams v. Infinity Clear Lake, et.al. - Palm Beach
Ratcliff v. Apostolic Child Development Centers, Inc. - Palm Beach

3










































































4





## Katrina S. Scarborough, CFA, CCF, MCF
## Osceola County Property Appraiser
www.property-appraiser.org
Osceola County Government Center
2505 East Irlo Bronson Memorial Hwy, Kissimmee, FL 34744
Ph: (407) 742-5000  Fax:( 407) 742-4900

# Parcel: 04-26-30-0106-0001-0040



| Owner Information | |
|---|---|
| Owner Name | BONANZA REAL ESTATE HOLDINGS LLC |
| Mailing Address | 365 W TAFT VINELAND RD STE 105 ORLANDO, FL  32824 |
| Physical Address | 4650 13TH ST, SAINT CLOUD FL 34769 |
| Description | RESTAURANT/CAFE-IMP |
| Tax District | 100 - ST CLOUD |

## Tax Values

| Current Values | | Certified Values | |
|---|---|---|---|
| Current Value represents working appraised values as of 09/27/2020, which are subject to change prior to certification | | Certified Value represents certified values that appeared on the tax roll as of 10/02/2019 | |
| Land | $408,800 | Land | $371,700 |
| AG Benefit | $0 | AG Benefit | $0 |
| Extra Features | $47,300 | Extra Features | $47,700 |
| Buildings | $749,900 | Buildings | $765,000 |
| Appraised(just) | $1,206,000 | Appraised(just) | $1,184,400 |
| Assessed(estimated) | $1,024,870 | Assessed* | $931,700 |
| Exemption(estimated) | $0 | Exemption | $0 |
| Taxable(estimated) | $1,024,870 | Taxable | $931,700 |
| * Assessed Values Reflect Adjustments for Agricultural Classification and/or the Save Our Homes Cap | | * Assessed Values Reflect Adjustments for Agricultural Classification and/or the Save Our Homes Cap | |

## Land Information - Total Acreage: 1.58

| Land Description | Units | Depth | Land Type | Land Value |
|---|---|---|---|---|
| COMMERCIAL  SF | 68824.80 | 0.00 | SF | $408,800 |

## Extra Features

| Extra Feature | Units | Year Built | Feature Value |
|---|---|---|---|
| COMMERCIAL-ASPHALT PAVING PER PARKING SPACE AVERAG | 109 | 2005 | $37,551 |
| COMMERCIAL-LIGHTS AVERAGE | 7 | 2005 | $5,460 |
| COMMERCIAL-CONCRETE PAVEMENT AVERAGE | 2451 | 2005 | $3,958 |
| COMMERCIAL-CHAIN LINK FENCE-8 FT HIGH GOOD | 49 | 2005 | $229 |

## Building Information

### Building 1

| | | | |
|---|---|---|---|
| **Description** | RESTAURANT/LOUNGE - FRANCHISE | **Bedrooms** | |
| **Year Built** | 2005 | **Bathrooms** | |
| **Value** | $749,900 | **Fixtures** | 14 |
| **Actual Area** | 6067 | **Roof Cover** | 11 BUILT UP COMPOSITION/METALIC |
| **Heated Area** | 5845 | **Exterior Wall** | (0.10) 21 STONE I (0.90) 6 SIDING ABOVE AVERAGE |

### Building 1 subarea

| Description | Code | Year Built | Total Sketched Area |
|---|---|---|---|
| BASE AREA | BAS | 2005 | 5845 |
| UTILITY FINISHED | UTF | 2005 | 112 |
| UTILITY FINISHED | UTF | 2005 | 30 |
| OPEN PORCH FINISHED | OPF | 2005 | 80 |

## Legal Description

| **Legal Description** | BONANZA PB 24 PG 69 LOT 4 |
|---|---|

**Building 1 Property Photo**



**Building 1 Sketch**



5

## CITY OF ST. CLOUD
## BUILDING DEPARTMENT

PERMIT NO. : 0400002497
PERMIT TYPE: BUILDING PERMIT (NEW)

DATE APPLIED: 9/10/04
DATE ISSUED
PREPARED BY : NANCYM   2/07/05

*** Permit will become INVALID if work is not started within 6 months of issuance or if work is abandoned for 6 months after work has commenced. NOTICE: In addition to the requirements to this permit, there may be additional restrictions applicable to this property that may be found in the public records of this county, and there may be additional permits required from other governmental entities such as water management districts, state agencies, or federal agencies. ***

OWNER'S NAME/ADDRESS
RUSSELL, JOHN H TR
15 E. DOREGAN AVENUE
KISSIMMEE                          FL 34744

CONTRACTOR'S NAME/ADDRESS
U S GENERAL CONSTRUCTION, INC  LICENSE
P O BOX 304                        CBC0102570
ALPHARETTA
770 442-3334                       GA 30009

PROPERTY ADDRESS
4650 13TH ST

PIN#
04-26-30-0000-0047-000-0          353862

ZONING
HB

SUBDIVISION NAME

REVIEWED BY
RT

NATURE OF WORK
NEW CONSTRUCTION

APPLICATION TYPE
COMMERCIAL (NEW STRUCTURE)

TENANT NAME CHILI'S RESTARUANT

ARCHITECT/ENGINEER/SUB CONTRCTR

VALIDATION
PERMIT FEE           610,500
PAID- PF             2,124.75 DATE 1/19/05 RECEIPT# 0083289

OTHER FEES:                        ASSESSED        AMT-PAID        BALANCE
TYPE- PERMIT PLAN REVIEW FEE                       1,062.37        .00
TYPE- POLICE SVC IMPACT COMMER     4,862.35        4,862.35        .00
TYPE- FIRE SVC IMPACT COMMERCI     3,019.41        3,019.41        .00
TYPE- RADON GAS FEE-NEW CONST.     56.96           56.96           .00
TYPE- SEWER IMPACT COMMERCIAL      190.00          190.00          .00
TYPE- SEWER IMPACT PERCOLL         44,976.15       44,976.15       .00
TYPE- TRANS IMPACT COMMER'L        41,160.83       41,160.83       .00
TYPE- TRANS IMPACT COMMERO         41,160.85       41,160.85       .00
TYPE- WATER TAP FEE-COMMERCIAL     225.00          225.00          .00
TYPE- WATER IMPACT FEE COMMERI     12,710.00       12,710.00       .00
FOUNDATION SRVY REQUIRED  - YES
FLOOD ZONE                - NA

MORE INFORMATION ON NEXT PAGE

WARNING TO OWNER: YOUR FAILURE TO RECORD A NOTICE OF COMMENCEMENT MAY RESULT IN YOUR PAYING TWICE FOR IMPROVEMENTS TO YOUR PROPERTY. IF YOU INTEND TO OBTAIN FINANCING, CONSULT WITH YOUR LENDER OR AN ATTORNEY BEFORE RECORDING YOUR NOTICE OF COMMENCEMENT

City of St. Cloud - Reproduced from Scanned Imaging System

---

## CITY OF ST. CLOUD
## BUILDING DEPARTMENT

CONTINUATION*** PAGE 2
DATE APPLIED: 9/10/04
DATE ISSUED            2/07/05
PREPARED BY : NANCYM

PERMIT NO. : 0400002497
PERMIT TYPE: BUILDING PERMIT (NEW)

*** Permit will become INVALID if work is not started within 6 months of issuance or if work is abandoned for 6 months after work has commenced. NOTICE: In addition to the requirements to this permit, there may be additional restrictions applicable to this property that may be found in the public records of this county, and there may be additional permits required from other governmental entities such as water management districts, state agencies, or federal agencies. ***

PARKING SPACES RE9.   - 74
SETBACK - FRONT       - 25/85
SETBACK - LEFT SIDE   - 10/80
SETBACK - REAR        - 10/120
SETBACK - RIGHT SIDE  - 10/22
SETBACK - SIDE STREET - NA
TOTAL SQUARE FEET       5697
FINAL SURVEY REQUIRED   - YES

ANY DEVIATIONS FROM THE APPROVED PLANS REQUIRES A LETTER OF APPROVAL FROM THE ARCHITECT/ENGINEER.
OTHER APPROVED DRAINS ARE TO TERMINATE AT A FRENCH DRAIN OR APPROVED LOCATION.
SUBMIT COMPACTION REPORTS WITH 90% DENSITY.
TYPE I AND TYPE II HOODS REQUIRE SEPARATE PLANS AND PERMITS
SUBMIT A FINAL SURVEY PRIOR TO FINAL INSPECTION
SUBMIT A FOUNDATION SURVEY PRIOR TO 1ST INSPECTION
A NEW BUSINESS INSPECTION WILL BE REQUIRED WHEN THE STORE IS SETUP AND READY TO OPEN BEFORE A BUSINESS LICENSE WILL BE ISSUED.
NOTICE OF COMMENCEMENT TO BE IN BUILDING DEPT. PRIOR TO FIRST INSPECTION
BUILDING, ELECTRICAL, PLUMBING, GAS PIPING, HOOD MECHANICAL, FIRE SUPPRESSION SYSTEM, AND AIR CONDITIONING PERMITS ARE REQUIRED.
SEE REDLINES NOTES ON PLANS.
SUBMIT A TERMITE APPLICATION-CERTIFICATE AT TIME OF SLAB INSPECTION AND ALL OTHER AREAS WITHIN 1 FT OF THE PRIMARY STRUCTURE.
SUBMIT A TERMITE CERTIFICATE OF COMPLIANCE AT TIME OF FINAL INSPECTION
SUBMIT SEALED TRUSS ENGINEERING AT FRAMING INSPECTION.
CONTRACTOR WILL PROVIDE WINDOW/DOOR ATTACHMENT CUT SHEET DETAILS AT JOB SITE AT TIME OF FRAMING INSPECTION.
add emergency exit light at east. "no gas" door.

WARNING TO OWNER: YOUR FAILURE TO RECORD A NOTICE OF COMMENCEMENT MAY RESULT IN YOUR PAYING TWICE FOR IMPROVEMENTS TO YOUR PROPERTY. IF YOU INTEND TO OBTAIN FINANCING, CONSULT WITH YOUR LENDER OR AN ATTORNEY BEFORE RECORDING YOUR NOTICE OF COMMENCEMENT

City of St. Cloud - Reproduced from Scanned Imaging System

6



**3401.5.4 Non-Qualified Buildings** - The provisions of 3401.5.1 - 3401.5.3 shall not apply to the following:

1. New buildings constructed in a historic district;
2. New additions to historic buildings;
3. Buildings that are reconstructed;
4. Institutional occupancies such as hospitals, nursing homes, mental hospitals, detoxification facilities, jails and correctional institutions.

**3401.6 Maintenance.** All buildings, structures, electrical, gas, mechanical and plumbing systems, both existing and new, and all parts thereof, shall be maintained in a safe and sanitary condition. All devices or safeguards which are required by the technical codes when constructed, altered or repaired, shall be maintained in good working order. The owner, or his designated agent, shall be responsible for the maintenance of buildings, structures, electrical, gas, mechanical and plumbing systems.

**3401.7 Application to existing buildings**

**3401.7.1 Additions**

**3401.7.1.1** When additions, or alterations increasing floor area, are made to an existing building, and the addition and existing buildings are separated by a fire wall, the addition shall conform to all the requirements of this code applicable to a building of the area of the addition.

**3401.7.1.2** Where the existing building and the addition are not separated by a fire wall and the area of the addition is 25 percent or more of the area of the existing building, the existing building and the addition shall be made to comply with all requirements of this code for a building of area equal to the combined area of the addition and existing building.

> **Exception:** Existing buildings shall not be required to be upgraded to the structural requirements of the code in effect on the date of application of the permit for the addition.

**3401.7.1.3** Where the existing building and the addition are not separated by a fire wall and the area of the addition is less than 25 percent of the area of the existing building, the addition shall conform to all requirements of this code applicable to the building of the combined area of the existing building and the addition; and the existing building shall conform to the requirements of this code applicable to facilities for means of egress and automatic fire-extinguishing systems for a building of the combined area of the addition and existing building.

**3401.7.2 Repairs and Alterations**

**3401.7.2.1** Repairs and alterations not increasing the area of the building, made within any 12 month period, shall be as set forth in this section.

**3401.7.2.2** Structural repairs and alterations, the cost of which does not exceed 25 percent of the value of the existing building or structure, shall comply with the requirements for new buildings or structures except that minor structural alterations, with the approval of the building official, may be made of the same material and degree of fire-resistivity of which the building or structure is constructed.

**3401.7.2.3** Non-structural repairs and alterations exclusive of fixtures and furniture, the cost of which does not exceed 25 percent of the value of the existing building or structure and which do not affect egress or fire-resistivity, may be made of the same material of which the building or structure is constructed.

**3401.7.2.4** The replacement of garage doors, exterior doors, skylights, operative and inoperative windows shall be designed and constructed in accordance with Chapter 16 of this code.

**3401.7.2.5** Repairs and alterations amounting to over 25 percent but not exceeding 50 percent of the value of the existing building may be made during any 12 month period without making the entire existing building comply with the requirements of this code for a building of like area, height and occupancy.

**3401.7.2.6** When repairs and alterations amounting to more than 50 percent of the value of the existing building are made during any 12 month period, the building or structure shall be made to conform to the requirements for a new building or structure or be entirely demolished.

> **Exceptions:**
> 1. Provided there is no change in occupancy, foundations, slabs, tie beams, tie columns, reinforced masonry and masonry walls erected in compliance with the code under which the building was constructed.
> 2. Those property improvements involuntarily altered by right of eminent domain need only to meet the requirements of the code in force at the time of original construction.

**3401.7.3 Structural Determination.** For purposes of 3401.7, structural shall mean any part, material or assembly of a building or structure which affects the safety of such building or structure and/or which supports any dead or designed live load and the removal of which part, material or assembly could cause, or be expected to cause, all or any portion to collapse or to fail.

**3401.8 High Velocity hurricane zone application to existing buildings**

**3401.8.1 General**

**3401.8.1.1** Existing buildings or structures to which additions, alterations, repair or changes of group of occupancy are proposed or intended shall be made to comply with all the requirements for new buildings or structures of like area, height, type of construction or group of occupancy, except as provided in this Section.

increase in combustibility or flamespread rating beyond the limits herein established through the effects of age, moisture or other atmospheric conditions.

**NON-VISITATION CRYPT MAUSOLEUM.** A mausoleum for the public where the crypts are not accessible to the public.

**NOTICE OF ACCEPTANCE (NOA).** The approval document, indicating compliance with the *Florida Building Code, Building* issued by Miami-Dade County Product Control Division for construction products and assemblies. All items requiring product approval in the High Velocity Hurricane Zone must first obtain a NOA before they are installed or before a building permit is issued.

**OCCUPANCY.** The purpose for which a building, or part thereof, is used or intended to be used.

**OCCUPANCY, MIXED.** A building used for two or more occupancies classified in different occupancy groups.

**OCCUPANT CONTENT.** The actual number of total occupants permitted to occupy a floor area in accordance with the maximum capacity of the exits serving that floor area.

**OCCUPANT LOAD.** The calculated minimum number of persons for which the means of egress of a building or portion thereof is designed, based on Table 1003.1.

**OCCUPIABLE ROOM.** A room or enclosed space designed for human occupancy in which individuals congregate for amusement, educational or similar purposes, or in which occupants are engaged at labor; and which is equipped with means of egress, light, and ventilation facilities meeting the requirements of this code.

**OPEN AIR GRANDSTANDS AND BLEACHERS.** Seating facilities which are located so that the side toward which the audience faces is unroofed and without an enclosing wall.

**OPEN PLAN BUILDINGS.** Buildings used for day-care homes which have rooms and corridors delineated by tables, chairs, desks, bookcases, counters, low-height [maximum 5-ft (1.5-m)] partitions, or similar furnishings.

**ORGANIC PEROXIDE.** An organic compound that contains the bivalent -O-O- structure and which may be considered to be a structural derivative of hydrogen peroxide where one or both of the hydrogen atoms have been replaced by an organic radical. Organic peroxides may present an explosion hazard (detonation or deflagration) or they may be shock sensitive. They may also decompose into various unstable compounds over an extended period of time.

**OWNER.** Any person, agent, firm or corporation having a legal or equitable interest in the property.

**OXIDIZER.** A chemical other than a blasting agent or explosive that initiates or promotes combustion in other materials, thereby causing fire either of itself or through the release of oxygen or other gases.

**P-DELTA EFFECT.** The secondary effect on shears and moments of frame members caused by the action of the vertical loads induced by displacement of the building frame resulting from lateral forces.

**PANIC HARDWARE.** A door latching assembly incorporating a device which releases the latch upon the application of a force in the direction of exit travel. 

**PARTITION.** An interior wall, other than folding or portable, that subdivides spaces within any story, attic or basement of a building.

**PARTITION, PARTIAL.** A partition with a maximum height of 72 inches (1829 mm).

**PENETRATION.** An opening created in a membrane or assembly to accommodate penetrating items for electrical, mechanical, plumbing, environmental and communication systems.

  **Through Penetration.** An opening that passes through an entire assembly.

  **Membrane Penetration.** An opening made through one side (wall, floor or ceiling membrane) of an assembly.

**PENETRATION FIRESTOP SYSTEM.** An assemblage of specific materials or products that are designed, tested and fire rated to resist, for a prescribed period of time, the spread of fire through penetrations.

**PENTHOUSE.** An enclosed, unoccupied structure above the roof of a building, other than a rooftop structure or bulkhead, occupying not more than one-third of the roof area.

**PERLITE CONCRETE.** A lightweight insulating concrete having a dry unit weight of approximately 30 pcf (480 kg/m$^3$) made with perlite concrete aggregate. Perlite aggregate is produced from a volcanic rock which, when heated, expands to form a glass-like material of cellular structure.

**PERMANENT SEATING.** Seating facilities which remain at a location for more than 90 days. Applies to reviewing stands, grandstands and bleachers.

**PERMISSIBLE EXPOSURE LIMIT (PEL).** The maximum permitted 8-hour time-weighted average concentration of an airborne contaminant. The maximum permitted time weighted average exposures to be used are those published in OSHA 29 CFR 1910.1000.

**PERMIT.** An official document or certificate issued by the building official authorizing performance of a specified activity.

**PERSON.** A natural person, his heirs, executors, administrator, or assigns, or a firm, partnership or corporation and its successors or assigns, or the agent of any of the aforesaid.

# CHAPTER 10
# MEANS OF EGRESS

## SECTION 1001
## GENERAL

### 1001.1 Scope

**1001.1.1** Provisions of this chapter shall govern the design, construction and arrangement of elements to provide a safe means of egress from buildings and structures.

**1001.1.2** In every building hereafter erected, means of egress shall comply with the minimum requirements of this chapter.

**1001.1.3** Means of egress shall consist of continuous and unobstructed paths of travel to the exterior of a building. Means of egress shall not be permitted through kitchens, closets, restrooms and similar areas nor through adjacent tenant spaces.

**Exception:** Means of egress shall be permitted through a kitchen area serving adjoining rooms constituting part of the same dwelling unit or guest room.

**1001.1.4** When unusually hazardous conditions exist, the building official may require additional means of egress to assure the safety of the occupants.

**1001.2 Alterations.** A building shall not hereafter be altered to reduce the capacity of the means of egress to less than required by this chapter nor shall any change of occupancy be made in any building unless such building conforms with the requirements of this chapter.

## SECTION 1002
## DEFINITIONS

For definitions, see Chapter 2.

## SECTION 1003
## OCCUPANT LOAD AND MEANS OF
## EGRESS CAPACITY

### 1003.1 Occupant load

**1003.1.1** For determining the means of egress required, the minimum number of persons for any floor area shall in no case be taken less than specified in Table 1003.1.

**Exceptions:**

1. In a special purpose factory-industrial occupancy, the occupant load shall be the maximum number of persons to occupy the area under any probable conditions.

2. The occupant load for towers shall be the number of persons expected to occupy the space, with spaces not subject to human occupancy because of machinery or equipment excluded from the gross area calculation.

**1003.1.2** The occupant load of any occupancy may be determined in accordance with 1003.1 when the necessary aisles and means of egress are provided as approved by the building official. An aisle, egress and seating diagram shall be provided to the building official to substantiate the occupant load.

**TABLE 1003.1**
**MINIMUM OCCUPANT LOAD**

| USE | AREA PER OCCUPANT[2, 3] (sq ft) |
|---|---|
| **Assembly without fixed seats** | |
| Concentrated (includes among others, auditoriums, churches, dance floors, lodge rooms, reviewing stands, stadiums) | 7 net |
| Waiting Space | 3 net |
| Kitchens | 100 gross |
| Unconcentrated (includes among others conference rooms, exhibit rooms, gymnasiums, lounges, stages, platforms) | 15 net |
| Swimming pool water surface | 50 gross |
| Swimming pool deck | 30 gross |
| Exercise rooms with equipment | 50 gross |
| Exercise rooms without equipment | 15 gross |
| Lighting and access catwalks, galleries, and gridirons | 100 net |
| Skating rinks | 50 gross |
| **Assembly with fixed seats** | Note 1 |
| Bowling alleys, allow 5 persons for each alley, including 15 ft of runway, and other spaces in accordance with the appropriate listing herein | 7 net |
| Business areas | 100 gross |
| Courtrooms without fixed seats | 40 net |
| Courtrooms with fixed seats | Note 1 |
| Day-care | 35 net |
| Educational (including Educational Uses Above the 12th Grade) | |
| Classroom areas | 20 net |
| Shops and other vocational areas | 50 net |
| Industrial areas | 100 gross |
| Institutional | |
| Sleeping areas | 120 gross |
| Inpatient treatment and ancillary areas | 240 gross |
| Outpatient area | 100 gross |
| Resident housing areas | 120 gross |
| Library | |
| Reading rooms | 50 net |
| Stack area | 100 gross |
| Malls | Section 413 |
| Mercantile | |
| Basement and grade floor areas open to public | 30 gross |
| Areas on other floors open to public | 60 gross |
| Multiple street floors - each[4] | 40 gross |
| Storage, stock, shipping area not open to public | 300 gross |
| Parking garage | 200 gross |
| Residential | 200 gross |
| Restaurants (without fixed seats) | 15 net |
| Restaurants (with fixed seats) | Note 1 |
| Storage area, mechanical | 300 gross |

For SI: 1 sq ft = 0.0929 m$^2$.

1003.2 - 1003.3.2

**Notes:**

1. The occupant load for an area having fixed seats installed shall be determined by the number of fixed seats. Capacity of seats without dividing arms shall equal one person per 18 inches (457 mm). For seating booths, one person per 24 inches (610 mm).

2. See 202 for definitions of gross and net floor areas.

3. The occupant load of floor areas of the building shall be computed on the basis of the specific occupancy classification of the building. Where mixed occupancies occur, the occupant load of each occupancy area shall be computed on the basis of that specific occupancy.

4. For the purpose of determining occupant load in mercantile occupancies where, due to differences in grade of streets on different sides, two or more floors directly accessible from streets exist, each such floor shall be considered a street floor. The occupant load factor shall be one person for each 40 ft² (3.7 m²) of gross floor area of sales space.

## 1003.2 Measurement of means of egress

**1003.2.1** The width of the means of egress shall be determined from occupants served in accordance with Table 1004.

**1003.2.2** The width shall be measured in the clear at its narrowest point. Handrails may project 3¹/₂ inches (89 mm) and door jambs 1 inch (25.4 mm) on each side of the measured width; however, the clear width of doorways shall not be reduced.

### 1003.2.3 Doorways

**1003.2.3.1** The clear opening at swinging doors shall be measured between the face of the door and the stop, with the door open 90 degrees.

**1003.2.3.2** There shall be no projections into the required clear opening lower than 34 inches (864 mm) above the floor or ground. Projections into the clear opening between 34 inches (864 mm) and 80 inches (2032 mm) above the floor or ground shall not exceed 4 inches (102 mm) measured horizontally. Door stops at the head of the door frame are allowed to project into the clear opening according to 1003.2.5.

**1003.2.4** Objects projecting from walls with their leading edges between 27 and 80 inches (686 and 2032 mm) above the finished floor shall protrude no more than 4 inches (102 mm) into walks, corridors, passageways or aisles. Free-standing objects mounted on posts or pylons may overhang 12 inches (305 mm) maximum from 27 to 80 inches (686 and 2032 mm) above the ground or finished floor.

**1003.2.5 Headroom.** Means of egress shall be designed and maintained to provide a minimum headroom of 7 ft 6 in. (2.3 m) with projections from the ceiling at least 6 ft 8 in. (2 m) nominal height above the finished floor. Doorways in a means of egress shall provide a minimum headroom of 6 ft 8 in. (2 m). Stairs in a means of egress shall comply with 1007.7.

**Exception:** Means of egress in one- and two-family dwellings shall be permitted to provide a minimum headroom of 7 ft as provided at 1203.2.

### ♿1003.2.6 Accessibility
**1003.2.6.1** For accessibility provisions related to protruding objects, refer to 11-4.4 as provided at 1203.2.

**1003.2.7** Changes in level in means of egress shall be either by a ramp or a stair where the elevation difference is more than 21 inches (53.3 cm). Changes in level of means of egress not exceeding 21 inches (53.3 cm) shall be achieved by a ramp or a stair. The presence and location of ramped walkways shall be readily apparent. Where a change in level means of egress not exceeding 21 in. (53.3 cm) is achieved by a stair, the minimum tread depth of such stair shall be 13 in. and the presence and location of each step shall be readily apparent. Ramps complying with 1013 shall be used for changes in elevation of 12 in. (305 mm) or less in exit access corridors, exits and exit discharge.

**Exception:** Except in one- and two-family dwellings and within dwelling units.

**1003.2.7.1** Changes in elevation of walking surfaces shall not exceed ¹/₄ in. (0.6 cm). Changes in elevation exceeding ¹/₄ in. (0.6 cm), but not exceeding ¹/₂ in. (1.3 cm), shall be beveled 1 to 2. Changes in elevation exceeding ¹/₂ in. shall be considered a change in level and shall comply with the requirements of 1003.2.7.

**1003.2.7.2** Walking surfaces shall be nominally level. The slope of a walking surface in the direction of travel shall not exceed 1 in 20 unless complying with the requirements of 1013. The slope perpendicular to the direction of travel shall not exceed 1 in 48.

**1003.2.7.3** Walking surfaces shall be slip resistant under foreseeable conditions. The walking surface of each element in the means of egress shall be uniformly slip resistant along the natural path of travel.

**Exception:** One- and two-family dwellings shall comply with the Exceptions at 1012.1.3.

♿**1003.2.8 Accessibility.** For accessibility provisions related to changes in levels see 11-4.3.8.

## 1003.3 Capacity of means of egress
**1003.3.1** The width of the means of egress shall be not less than the required capacity based on occupant load from Table 1003.1.

**1003.3.2** The capacity of exit stairways constructed in accordance with 1007 shall be not less than the minimum required herein. Exit stairways shall be permitted to be used as a required exit from all floors which they serve. If, for example, 3 stairways are required to serve the third floor of a building and a like number are required for the second floor, the total number of stairways required shall be 3, not 6, and the capacity of the stairway shall be determined by

1007.1.2 - 1007.4.2

1. All buildings of Type I and of Type II construction.
2. All Group A-1 and Group I buildings.
3. All other buildings three stories or more in height or occupied by more than 40 persons above or below the level of exit discharge.

> **Exception to item 3:** R3 occupancies and buildings of Type VI construction.

**1007.1.2** Stairways located in a required fire resistant enclosure shall have closed risers. All other stairways shall be permitted to have open risers.

**1007.1.3** Interior stairs constructed of wood, except those with open risers, shall be fireblocked as specified in 705.3.

> **Exception:** Protection is not required for those stairways exempted from enclosure in 1006.1.1.

**1007.1.4** The underside of interior stairways, if of combustible construction, shall be protected to provide not less than 1-hour fire resistance.

> **Exception:** When located within a dwelling unit.

**1007.1.5** Enclosed exit stairways that continue beyond the floor of discharge shall be interrupted at the floor of discharge by partitions, doors or other effective means.

> **Exception:** Stairs that continue 1/2 story beyond the level of exit discharge need not be interrupted by physical barriers where the exit discharge is clearly obvious.

**1007.2 Accessible Stairs.** Stairs required to be accessible by 11-4.1 shall comply with 11-4.9. Floor surfaces of stairs along accessible routes and in accessible rooms and spaces shall comply with 11-4.5.

**1007.3 Treads and risers**
**1007.3.1** Risers shall be a maximum height of 7 in. (17.8 cm) and a minimum height of 4 in. (10.2 cm). Treads shall be a minimum of 11 in.

**Exceptions:**
1. In one- and two-family dwellings and within dwelling units, treads and risers of stairs shall be permitted to be so proportioned that the sum of two risers and a tread, exclusive of projection of nosing, is not less than 24 inches (610 mm) nor more than 25 inches (635 mm). The height of risers shall not exceed 7¾ inches (197 mm), and treads, exclusive of nosing, shall be not less than 9 inches (229 mm) wide. Every tread less than 10 inches (254 mm) wide shall have a nosing, or effective projection, of approximately 1 inch (25.4 cm) over the level immediately below that tread.
2. Special stairs in 1007.8.
3. Industrial equipment access stairs and landings that serve as a component of the means of egress from the involved equipment and do not serve more than 20 people shall be permitted to have a minimum clear width of 22 in. (55.9 cm), minimum tread

depth of 10 in. (25.4 cm), maximum riser height of 9 in. (22.9 cm), minimum headroom of 6 ft 8 in. (203 cm), and a maximum height between landings of 12 ft.
4. As permitted at 1019.10.5 and 1019.11.7.

**1007.3.2** Riser height shall be measured as the vertical distance between tread nosings. Tread depth shall be measured horizontally between the vertical planes of the foremost projection of adjacent treads and at a right angle to the tread's leading edge, but shall not include beveled or rounded tread surfaces that slope more than 20 degrees (a slope of 2 in 2.75). At tread nosings, such beveling or rounding shall not be more than 12 in. (1.3 cm) in horizontal dimension.

> **Exception:** Tread depth of special stairs in 1007.8 shall be measured on a line perpendicular to the centerline of tread.

**1007.3.3** Treads shall be of uniform depth and risers of uniform height in any stairway between two floors. There shall be no variation exceeding 3/16 inch (4.8 mm) in the depth of adjacent treads or in the height of adjacent risers and the tolerance between the largest and smallest riser or between the largest and smallest tread shall not exceed 3/8 inch (9.5 mm) in any flight. The uniformity of winders and other tapered treads complying with 1007.8.1, 1007.8.2 and 1007.8.3 shall be measured at consistent distances from the narrower end of the treads.

> **Exception:** Where the bottom or top riser adjoins a sloping public way, walk or driveway having an established grade and serving as a landing, a variation in height of the riser of not more than 3 inches (76 mm) for every 3 ft (914 mm) of stairway width is permitted.

**1007.3.4** Tread slope shall not be more than 1/4 in. per ft (2 cm per m).

**1007.4 Landings**
**1007.4.1** A flight of stairs shall not have a vertical rise of more than 12 ft (3658 mm) between floors or landings.

**1007.4.2** Stairs shall have floors or landings at door openings. Stairs and intermediate landings shall continue with no decrease in width along the direction of egress travel. The width of landings shall be not less than the width of stairways they serve. Every landing shall have a minimum dimension measured in the direction of travel equal to the width of the stairway.

> **Exceptions:**
> 1. Landings shall be permitted to be not more than 4 ft (122 cm) in the direction of travel provided the stair has a straight run.
> 2. In one- and two-family dwellings, a door at the top of a stair shall be permitted to open directly at a stair provided the door does not swing over the stair and the door serves an area with an occupant load of fewer than 50 persons.

**1007.4.3** Stairway landings shall have guardrails as specified in 1015 on any open and unenclosed edges.

## 1007.5 Handrails

**1007.5.1** Stairways shall be equipped with handrails located not less than 34 inches (864 mm) nor more than 38 inches (965 mm) above the leading edge of a tread.

**Exceptions:**
1. Handrails for stairs not required to be accessible that form part of a guardrail may be 42 inches (1067 mm) high.
2. As required for Group I Unrestrained in 1024.1.4.
3. In one- and two-family dwellings and within dwelling units in R2 occupancies, stairways having four or more risers above a floor or finished ground level shall be equipped with handrails located not less than 34 inches (864 mm) nor more than 38 inches (965 mm) above the leading edge of a tread.

**1007.5.2** Stairways shall have handrails on each side.

**Exceptions:**
1. Aisle stairs provided with a center handrail need not have additional handrails.
2. Stairs within dwelling units and aisle stairs serving seating on only one side may have a handrail on one side only.
3. Spiral stairs shall be provided with handrails in accordance with 1007.8.2.

**1007.5.3** Handrails shall have either a circular cross section with a diameter of 1¼ inches (32 mm) to 2 inches (51 mm) or a noncircular cross section with a perimeter dimension of at least 4 inches (102 mm) but not more than 6¼ inches (159 mm) and a largest cross section dimension not exceeding 2¼ inches (57 mm). Edges shall have a minimum radius of ⅛ inch (3 mm).

**Exception:** Handrails for dwellings or within dwelling units shall have a circular cross section with a diameter of 1¼ inches (32 mm) to 2 inches (51 mm), or provide a noncircular cross section with equivalent graspability performance.

**1007.5.4** Gripping surfaces shall be continuous, without interruption by newel posts or other obstructions.

**Exceptions:**
1. Handrails within dwelling units shall be permitted to be interrupted by a newel post at a turn.
2. In dwelling units, the use of a volute, turnout or starting easing shall be allowed over the lowest tread.
3. Handrail brackets or balusters attached to the bottom surface of the handrail shall not be considered to be obstructions to graspability, provided that the following conditions are met:

(1) They do not project horizontally beyond the sides of the handrail within 1½ in. (3.75 cm) of the bottom of the handrail and provided that, for each ½ in. (1.3 cm) of additional handrail perimeter dimension above 4 in. (10 cm), the vertical clearance dimension of 1½ in. (3.15 cm) can be reduced by ⅛ in. (0.3 cm).
(2) They have edges with a radius of not less than ⅛ in. (0.3 cm).
(3) They obstruct not in excess of 20 percent of the handrail length.

**1007.5.5** Handrails shall extend at least 12 inches (305 mm) horizontally beyond the top riser of a flight. At the bottom, the handrail shall continue to slope for a distance of the depth of one tread from the bottom riser.

**Exceptions:**
1. Handrails within a dwelling unit.
2. Continuous handrails at the inside turn of stairs.

**1007.5.6** Clear space between handrail and wall shall be a minimum of 1½ inches (38 mm).

**1007.5.7** Handrails shall be provided within 30 inches (762 mm) of all portions of the stair width required for egress capacity in accordance with Table 1004. The required egress width shall be along the natural path of travel.

**1007.5.8** Handrails, where required along open-sided flights of stairs, shall be of construction adequate in strength, durability and attachment for their purposes as prescribed in 1608.2.

**1007.5.9** For provisions related to handrails on stairs which are required to be accessible, refer to 11-4.9.1, 11-4.9.4, and 11-4.26.

## 1007.6 Width

**1007.6.1** Stairs shall be clear of all obstructions except projections not exceeding 3½ inches (89 mm) at or below handrail height on each side.

**1007.6.2** Width of stairs shall not decrease in the direction of exit travel.

**1007.6.3** The minimum width of any stair serving as a means of egress shall be in accordance with Table 1004.

**1007.7 Headroom.** Stairs shall have a minimum headroom clearance of 6 ft 8 inches (2032 mm) measured vertically from a line connecting the edge of the nosings. Such headroom shall be continuous above the stair to the point where the line intersects the landing below, one tread depth beyond the bottom riser. This minimum shall be maintained the full width of the stair and landing. (See 1007.3.1 for industrial stairs.)

**1019.3.2** Two means of egress shall be required from theater balconies when the occupancy exceeds 50.

**1019.3.3 Enclosure and Capacity.** All interior stairways and other vertical openings shall be enclosed and protected as provided in this chapter, except that stairs may be open between balcony and main assembly floor in occupancies such as theaters, churches and auditoriums. The means of egress capacity required for balconies or galleries shall be determined on the same basis as those required for the occupancy use.

**1019.3.4 Travel Distance.** The maximum travel distance for balcony or gallery from any seat to an exit shall be determined on the same basis as the building occupancy.

## 1019.4 Stages

**1019.4.1** Where two means of egress are required, they shall be separate, with at least one means of egress on each side of the stage.

**1019.4.2** The means of egress from lighting and access catwalks, galleries and gridirons shall meet the requirements for Group F occupancies.

**Exceptions:**
1. A minimum width of 22 inches (559 mm) shall be permitted for lighting and access catwalks.
2. A second means of egress is not required from these areas where a means of escape to a floor or to a roof is provided. Ladders, alternating tread stairs, or spiral stairs shall be permitted in the means of escape.

**1019.4.3** Each tier of dressing rooms shall be provided with two exits.

**1019.4.4** Stairways from stage and dressing rooms need not be enclosed.

**1019.5 Tents.** Tent exits, aisles, seating, etc., shall conform with the requirements for places of assembly. All exits shall be kept free and clear of obstructions while the tent is occupied by the public.

**1019.6 Projection rooms.** The projection room shall be provided with not less than one exit having a minimum opening of not less than 30 inches (762 mm) wide and 80 inches (2032 mm) high.

## 1019.7 Doors

**1019.7.1** A key locking device may be used from the egress side on the main exterior exit doors on Group A-2 having an occupancy of 300 or less, subject to the following:
1. There is a readily visible durable sign on or adjacent to the door stating: THIS EXIT TO REMAIN UNLOCKED WHEN THIS BUILDING IS OCCUPIED. The sign shall be in letters no less than 1 inch (25.4 mm) high on a contrasting background.

2. The locking device must be of a type that will be readily distinguishable as locked.
3. The main exit door is a single door or one pair of doors.
4. When unlocked, the door or both leaves of the pair must be free. The use of the key locking device may be revoked by the building official for due cause.

**1019.7.2** Each door in a means of egress from an area of Group A occupancy may be provided with a latch or lock only if it is panic hardware or fire exit hardware, which releases when pressure of no more than 15 lb (67 N) is applied to the releasing devices in the direction of the exit travel. Such releasing devices may be bars or panels extending not less than 1/2 the width of the door and placed at heights suitable for the service required, but not less than 34 inches (86 cm) nor more than 48 inches (122 cm) above the floor. Whenever panic hardware is used on a labeled fire door, the panic hardware shall be labeled as fire exit hardware.

**1019.7.3** If balanced doors are used and panic hardware is required, the panic hardware shall be of the pushpad type and the pad shall not extend more than 1/2 the width of the door measured from the latch side.

## 1019.8 Stairway construction

**1019.8.1** In buildings of Group A occupancy, flights of less than three risers shall not be used in interior or exterior stairways, exit passageways, aisles, at entrance or elsewhere in connection with required exits. To overcome lesser differences in level, ramps in accordance with 1013 shall be used. See 1019.10 for additional aisle and stair information in assembly occupancies.

## 1019.9 Guardrails
(See 1019.10.9 for guardrail provisions.)

## 1019.10 Assembly aisles and seating
### 1019.10.1 General

**1019.10.1.1 Scope.** Provisions in 1019.10 shall apply to all assembly aisles and seating except for special provisions relating to seating for reviewing stands, grandstands and bleachers.

**1019.10.1.2 Aisles Required.** Every portion of any building which contains seats, tables, displays, equipment or other material shall be provided with aisles leading to exits.

**1019.10.1.3 Travel Distance.** Exits and aisles shall be so located that the travel distance to an exit door shall not be greater than 150 ft (61 m) measured along the line of travel. Travel distance may be increased to 200 ft (76 m) in sprinklered buildings.

**Exceptions:**
1. Smoke-protected assembly seating and outdoor assembly seating in accordance with 1019.11.3

2. Where the gradient of an aisle is steeper than 8 in. (20.3 cm) in rise in 11 in. (27.9 cm) of run to maintain necessary sight lines in the adjoining seating area, the riser height shall be permitted to exceed 8 in. (20.3 cm) but shall not exceed 9 in. (22.9 cm).

3. Riser height may be nonuniform but only to the extent necessitated by changes in the slope of the adjoining seating area to maintain adequate sightlines. Where nonuniformities exceed 3/16 inch (4.8 mm) between adjacent risers, the exact location of such nonuniformities shall be indicated with a distinctive marking stripe on each tread at the nosing or leading edge adjacent to the nonuniform risers.

**1019.10.5.3** A contrasting marking stripe shall be provided on each tread at the nosing or leading edge such that the location of each tread is readily apparent when viewed in descent. Such stripe shall be a minimum of 1 inch (25.4 mm) wide and a maximum of 2 inches (51 mm) wide.

**Exception:** The marking stripe shall not be required where tread surfaces and environmental conditions under all conditions of use are such that the location of each tread is readily apparent, particularly when viewed in descent.

### 1019.10.6 Aisle handrails

**1019.10.6.1** Ramped aisles having a slope exceeding 1:15 and aisle stairs shall be provided with handrails located either at the side or within the aisle width.

**Exceptions:**

1. Handrails are not required for ramped aisles having a slope no greater than 1:8 and having seating on both sides.
2. Handrails are not required if, at the side of the aisle, there is a guardrail that complies with graspability requirements for handrails.

**1019.10.6.2** Where there is seating on both sides of the aisle, the handrail shall be discontinuous with gaps or breaks at intervals not exceeding 5 rows to facilitate access to seating and to permit crossing from one side of the aisle to the other. These gaps or breaks shall have a clear width of at least 22 inches (559 mm) and not greater than 36 inches (914 mm), measured horizontally and the handrails shall have rounded termination or bends.

**1019.10.6.3** Where handrails are provided in the middle of aisle stairs, there shall be an additional intermediate handrail located approximately 12 inches (305 mm) below the main handrail.

### 1019.10.7 Aisle termination

**1019.10.7.1** Dead-end aisles which terminate only at one end with a cross aisle, foyer, doorway or vomitory giving access to an exit, shall be not greater than 20 ft (6096 mm) long.

**Exception:** A longer dead-end aisle shall be permitted where seats served by the dead-end aisle are not more than 24 seats from another aisle, measured along a row of seats having a minimum clear width of 12 inches (305 mm) plus 0.6 inch (15.2 mm) for each additional seat over a total of seven in the row.

**1019.10.7.2** Each end of a cross aisle shall terminate at an aisle, foyer, doorway or vomitory giving access to an exit.

**1019.10.8 Aisle Obstructions.** There shall be no obstructions in the required width of aisles except for handrails as provided in 1007.5 and 1019.10.2.5.

### 1019.10.9 Guardrails

**1019.10.9.1 In Front of Seats.** Guardrails on a balcony, loge or gallery immediately in front of the first row of fixed seats and which are not at the end of an aisle shall be not less than 26 inches (660 mm) high.

**1019.10.9.2 At End of Aisles.** Guardrails shall be provided at the ends of aisles where they terminate at a fascia of boxes, balconies and galleries. The top of such guardrails shall extend for the width of the aisle and be no closer than 42 inches (1067 mm) to the closest surface of the aisle where there are steps and 36 inches (914 mm) otherwise.

### 1019.10.9.3 Aisle guardrails

**1019.10.9.3.1** Aisles located more than 30 inches (762 mm) above the floor or grade below shall have guardrails in accordance with 1015.

**1019.10.9.3.2** Where an elevation change of 30 inches (762 mm) or less occurs between a cross aisle and the adjacent floor or grade below, guardrails not less than 26 inches (660 mm) above the aisle floor shall be provided.

**Exception:** Where the backs of seats on the front of the cross aisle project 24 inches (610 mm) or more above the adjacent floor of the aisle, a guardrail need not be provided.

### 1019.10.9.4 Stages and platforms

**1919.10.9.4.1** Guardrails are not required on the audience side of stages, raised platforms, and other raised floor areas such as runways, ramps and side stages used for entertainment or presentations.

**1019.10.9.4.2** Permanent guardrails are not required at vertical openings in the performance area of stages.



# FLORIDA BUILDING CODE Sixth Edition (2017)

## *Building*

Item No. 5601L17

INTERNATIONAL **CODE COUNCIL**®

reproduction or distribution authorized. ANY UNAUTHORIZED REPRODUCTION OR DISTRIBUTION IS A VIOLATION OF THE FEDERAL COPYRIGHT ACT AND THE

# CHAPTER 10

# MEANS OF EGRESS

## SECTION 1001
## ADMINISTRATION

**1001.1 General.** Buildings or portions thereof shall be provided with a *means of egress* system as required by this chapter. The provisions of this chapter shall control the design, construction and arrangement of *means of egress* components required to provide an *approved means of egress* from structures and portions thereof.

**1001.2 Minimum requirements.** It shall be unlawful to alter a building or structure in a manner that will reduce the number of *exits* or the minimum width or required capacity of the *means of egress* to less than required by this code.

**[F] 1001.3 Maintenance.** *Means of egress* shall be maintained in accordance with the *Florida Fire Prevention Code*.

**[F] 1001.4 Fire safety and evacuation plans.** Fire safety and evacuation plans shall be provided for all occupancies and buildings where required by the *Florida Fire Prevention Code*. Such fire safety and evacuation plans shall comply with the applicable provisions of the *Florida Fire Prevention Code*.

## SECTION 1002
## DEFINITIONS

**1002.1 Definitions.** The following terms are defined in Chapter 2:

ACCESSIBLE MEANS OF EGRESS.

AISLE.

AISLE ACCESSWAY.

ALTERNATING TREAD DEVICE.

AREA OF REFUGE.

BLEACHERS.

BREAKOUT.

COMMON PATH OF EGRESS TRAVEL.

CORRIDOR.

DOOR, BALANCED.

EGRESS COURT.

EMERGENCY ESCAPE AND RESCUE OPENING.

EXIT.

EXIT ACCESS.

EXIT ACCESS DOORWAY.

EXIT ACCESS RAMP.

EXIT ACCESS STAIRWAY.

EXIT DISCHARGE.

EXIT DISCHARGE, LEVEL OF.

EXIT, HORIZONTAL.

EXIT PASSAGEWAY.

EXTERIOR EXIT RAMP.

EXTERIOR EXIT STAIRWAY.

FIRE EXIT HARDWARE.

FIXED SEATING.

FLIGHT.

FLOOR AREA, GROSS.

FLOOR AREA, NET.

FOLDING AND TELESCOPIC SEATING.

GRANDSTAND.

GUARD.

HANDRAIL.

INTERIOR EXIT RAMP.

INTERIOR EXIT STAIRWAY.

LOW ENERGY POWER-OPERATED DOOR.

MEANS OF EGRESS.

MEANS OF ESCAPE.

MERCHANDISE PAD.

NOSING.

OCCUPANT LOAD.

OPEN-ENDED CORRIDOR.

PANIC HARDWARE.

PHOTOLUMINESCENT.

POWER-ASSISTED DOOR.

POWER-OPERATED DOOR.

PUBLIC WAY.

RAMP.

SCISSOR STAIRWAY.

SELF-LUMINOUS.

SMOKE-PROTECTED ASSEMBLY SEATING.

STAIR.

STAIRWAY.

STAIRWAY, SPIRAL.

WINDER.

INTERNATIONAL CODE COUNCIL®
Copyright © 2017 ICC. ALL RIGHTS RESERVED. Accessed by Christopher Zimmerman on Oct 2, 2017 2:00:00 PM pursuant to License Agreement with ICC. No further reproduction or distribution authorized. ANY UNAUTHORIZED REPRODUCTION OR DISTRIBUTION IS A VIOLATION OF THE FEDERAL COPYRIGHT ACT AND THE

Copyright 2018 National Fire Protection Association (NFPA®). Licensed, by agreement, for individual use and download on 01/14/2018 to Zimmerman Assoc for designated user Zimmerman. No other reproduction or transmission

# Florida Fire Prevention Code

## Sixth Edition



### Effective December 31, 2017

Jimmy Patronis
Chief Financial Officer
State Fire Marshal



Based on
*NFPA, 1 Fire Code™ 2015 edition*
*NFPA 101® , Life Safety Code® , 2015 edition*



Copyright 2014 National Fire Protection Association (NFPA®). Licensed, by agreement, for individual use and download on 01/14/2018 to Zimmerman Assoc for designated user Zimmerman. No other reproduction or transmission in any form permitted without written permission of NFPA. For inquiries or to report unauthorized use, contact licensing@nfpa.org.

Case 6:20-cv-01214-ADA Document 69-13 Filed 04/04/25 Page 14 of 108 PageID 700

Copyright © 2014 National Fire Protection Association®. All Rights Reserved.

# NFPA 101®

# Life Safety Code

## 2015 Edition

This edition of NFPA *101®*, *Life Safety Code®*, was prepared by the Technical Committees on Alternative Approaches to Life Safety, Assembly Occupancies, Board and Care Facilities, Building Service and Fire Protection Equipment, Detention and Correctional Occupancies, Educational and Day-Care Occupancies, Fire Protection Features, Fundamentals, Health Care Occupancies, Industrial, Storage, and Miscellaneous Occupancies, Interior Finish and Contents, Means of Egress, Mercantile and Business Occupancies, and Residential Occupancies, released by the Correlating Committee on Safety to Life, and acted on by NFPA at its June Association Technical Meeting held June 9–12, 2014, in Las Vegas, NV. It was issued by the Standards Council on August 14, 2014, with an effective date of September 3, 2014, and supersedes all previous editions.

Several Tentative Interim Amendments (TIAs), indicated by boxed notices at the appropriate areas within the document, were issued on August 14, 2014. These TIAs implement Standards Council Decision D#14-1 to temporarily withdraw NFPA 1124 and end all NFPA standards development activities relating to the storage and retail sales of consumer fireworks. For further information, see Decision D#14-1 at http://www.nfpa.org/sc2014.

Additional TIAs and Errata have been issued for NFPA *101* addressing topics other than consumer fireworks and similarly indicated by boxed notices at the appropriate areas within the document.

For further information on Tentative Interim Amendments, see Section 5 of the *Regulations Governing the Development of NFPA Standards*, available at http://www.nfpa.org/regs.

This edition of NFPA *101* was approved as an American National Standard on September 3, 2014.

### Origin and Development of NFPA 101

The *Life Safety Code* had its origin in the work of the Committee on Safety to Life of the National Fire Protection Association, which was appointed in 1913. In 1912, a pamphlet titled *Exit Drills in Factories, Schools, Department Stores and Theaters* was published following its presentation by the late Committee member R. H. Newbern at the 1911 Annual Meeting of the Association. Although the pamphlet's publication antedated the organization of the Committee, it was considered a Committee publication.

For the first few years of its existence, the Committee on Safety to Life devoted its attention to a study of the notable fires involving loss of life and to analyzing the causes of this loss of life. This work led to the preparation of standards for the construction of stairways, fire escapes, and other egress routes for fire drills in various occupancies, and for the construction and arrangement of exit facilities for factories, schools, and other occupancies. These reports were adopted by the National Fire Protection Association and published in pamphlet form as *Outside Stairs for Fire Exits* (1916) and *Safeguarding Factory Workers from Fire* (1918). These pamphlets served as a groundwork for the present *Code*. These pamphlets were widely circulated and put into general use.

In 1921, the Committee on Safety to Life was enlarged to include representatives of certain interested groups not previously participating in the standard's development. The Committee then began to further develop and integrate previous Committee publications to provide a comprehensive guide to exits and related features of life safety from fire in all classes of occupancy. Known as the *Building Exits Code*, various drafts were published, circulated, and discussed over a period of years, and the first edition of the *Building Exits Code* was published by the National Fire Protection Association in 1927. Thereafter, the Committee continued its deliberations, adding new material on features not originally covered and revising various details in the light of fire experience and practical experience in the use of the *Code*. New editions were published in 1929, 1934, 1936, 1938, 1939, 1942, and 1946 to incorporate the amendments adopted by the National Fire Protection Association.

Copyright 2018 National Fire Protection Association (NFPA®). Licensed, by agreement, for individual use and download on 01/14/2018 to Zimmerman Assoc for designated user Zimmerman. No other reproduction or transmission in any form permitted without written permission of NFPA®. For inquiries or to report unauthorized use, contact licensing@nfpa.org.

# NFPA 101
# Life Safety Code

### 2015 Edition

*IMPORTANT NOTE: This NFPA document is made available for use subject to important notices and legal disclaimers. These notices and disclaimers appear in all publications containing this document and may be found under the heading "Important Notices and Disclaimers Concerning NFPA Standards." They can also be obtained on request from NFPA or viewed at www.nfpa.org/disclaimers.*

NOTICE: An asterisk (*) following the number or letter designating a paragraph indicates that explanatory material on the paragraph can be found in Annex A.

A reference in brackets [ ] following a section or paragraph indicates material that has been extracted from another NFPA document. As an aid to the user, the complete title and edition of the source documents for extracts in mandatory sections of the document are given in Chapter 2 and those for extracts in informational sections are given in Annex C. Extracted text may be edited for consistency and style and may include the revision of internal paragraph references and other references as appropriate. Requests for interpretations or revisions of extracted text shall be sent to the technical committee responsible for the source document.

Information on referenced publications can be found in Chapter 2 and Annex C.

## Chapter 1 Administration

**1.1\* Scope.**

**1.1.1 Title.** NFPA *101, Life Safety Code,* shall be known as the *Life Safety Code®,* is cited as such, and shall be referred to herein as "this *Code*" or "the *Code.*"

**1.1.1.1** Anytime a reference is made to NFPA 1 or NFPA 101 within this Code, it shall be the Florida specific version of NFPA 1 and NFPA 101.

**1.1.2 Danger to Life from Fire.** The *Code* addresses those construction, protection, and occupancy features necessary to minimize danger to life from the effects of fire, including smoke, heat, and toxic gases created during a fire.

**1.1.3 Egress Facilities.** The *Code* establishes minimum criteria for the design of egress facilities so as to allow prompt escape of occupants from buildings or, where desirable, into safe areas within buildings.

**1.1.4 Other Fire-Related Considerations.** The *Code* addresses other considerations that are essential to life safety in recognition of the fact that life safety is more than a matter of egress. The *Code* also addresses protective features and systems, building services, operating features, maintenance activities, and other provisions in recognition of the fact that achieving an acceptable degree of life safety depends on additional safeguards to provide adequate egress time or protection for people exposed to fire.

**1.1.5\* Considerations Not Related to Fire.** The *Code* also addresses other considerations that, while important in fire conditions, provide an ongoing benefit in other conditions of use, including non-fire emergencies.

**1.1.6 Areas Not Addressed.** The *Code* does not address the following:

(1) \*General fire prevention or building construction features that are normally a function of fire prevention codes and building codes

(2) Prevention of injury incurred by an individual due to that individual's failure to use reasonable care

(3) Preservation of property from loss by fire

**1.1.7** The Florida Building Code shall be referred to anytime a reference is made to the building code or to NFPA 220, *Standard on Types of Building Construction,* in this Code or an adopted standard.

**1.2\* Purpose.** The purpose of this *Code* is to provide minimum requirements, with due regard to function, for the design, operation, and maintenance of buildings and structures for safety to life from fire. Its provisions will also aid life safety in similar emergencies.

**1.3 Application.**

**1.3.1\* New and Existing Buildings and Structures.** The *Code* shall apply to both new construction and existing buildings and existing structures.

**1.3.1.1** If deemed necessary by an AHJ for a complete, accurate, and thorough fire safety plans review or inspection, the AHJ may request assistance from the building, electrical, plumbing, mechanical or similar specialty inspector; however, nothing in this rule gives authority or jurisdiction to any person other than a fire safety inspector certified under Section 633.216, Florida Statutes, to perform fire safety inspections required by law, rule, ordinance, or code.

**1.3.2 Vehicles and Vessels.** The *Code* shall apply to vehicles, vessels, or other similar conveyances, as specified in Section 11.6, in which case such vehicles and vessels shall be treated as buildings.

**1.4\* Equivalency.** Nothing in this *Code* is intended to prevent the use of systems, methods, or devices of equivalent or superior quality, strength, fire resistance, effectiveness, durability, and safety over those prescribed by this *Code.*

**1.4.1 Technical Documentation.** Technical documentation shall be submitted to the authority having jurisdiction to demonstrate equivalency.

**1.4.2 Approval.** The system, method, or device shall be approved for the intended purpose by the authority having jurisdiction.

**1.4.3\* Equivalent Compliance.** Alternative systems, methods, or devices approved as equivalent by the authority having jurisdiction shall be recognized as being in compliance with this *Code.*

**1.5 Units and Formulas.**

**1.5.1 SI Units.** Metric units of measurement in this *Code* are in accordance with the modernized metric system known as the International System of Units (SI).

**1.5.2 Primary Values.** The inch-pound value for a measurement, and the SI value given in parentheses, shall each be acceptable for use as primary units for satisfying the requirements of this *Code.*

**1.6 Enforcement.** This *Code* shall be administered and enforced by the authority having jurisdiction designated by the governing authority.

**1.7 Conflicts.**

**1.7.1.** When a requirement differs between this Code and a referenced document, the requirement of this Code shall apply.

**1.7.2** When a conflict between a general requirement and a specific requirement occurs, the specific requirement shall apply.

**1.8** Florida Fire Prevention Code and Florida Building Code Interrelation. The Florida Fire Prevention Code contains several provisions and requirements that may interrelate with the Florida Building Code. It is not the intent of this Code that such interrelation result in duplicate reviews and inspections by either the fire safety authority or the building official. The authority having jurisdiction over

Copyright 2018 National Fire Protection Association (NFPA®). Licensed, by agreement, for individual use and download on 01/14/2018 to Zimmerman Assoc for designated user Zimmerman. No other reproduction or transmission in any form permitted without written permission of NFPA. For inquiries or to report unauthorized use, contact licensing@nfpa.org.

**3.3.171.3** *Metal Composite Material (MCM).* A factory-manufactured panel consisting of metal skins bonded to both faces of a core made of any plastic other than foamed plastic insulation as defined in 3.3.152.1. (SAF-MER)

**3.3.171.4** *Noncombustible (Material).* See 4.6.13.

**3.3.171.5** *Weathered-Membrane Material.* Membrane material that has been subjected to a minimum of 3000 hours in a weatherometer in accordance with ASTM G 155, *Standard Practice for Operating Xenon Arc Light Apparatus for Exposure of Non-Metallic Materials,* or approved equivalent. (SAF-MER)

**3.3.172\*** Means of Egress. A continuous and unobstructed way of travel from any point in a building or structure to a public way consisting of three separate and distinct parts: (1) the exit access, (2) the exit, and (3) the exit discharge. (SAF-MEA)

**3.3.172.1** *Accessible Means of Egress.* A means of egress that provides an accessible route to an area of refuge, a horizontal exit, or a public way. (SAF-MEA)

**3.3.173** Means of Escape. A way out of a building or structure that does not conform to the strict definition of means of egress but does provide an alternate way out. (SAF-MEA)

**3.3.174\*** Membrane. A thin layer of construction material. (SAF-FIR)

**3.3.175** Membrane Structure. See 3.3.272.4.

**3.3.176** Mercantile Occupancy. See 3.3.190.9.

**3.3.177** Metal Composite Material (MCM). See 3.3.171.3.

**3.3.178** Mezzanine. An intermediate level between the floor and the ceiling of any room or space. (SAF-FIR)

**3.3.179** Mixed Occupancy. See 3.3.190.10.

**3.3.180\*** Modification. The reconfiguration of any space; the addition or elimination of any door or window; the addition or elimination of load-bearing elements; the reconfiguration or extension of any system; or the installation of any additional equipment. (SAF-FUN)

**3.3.181** Multilevel Play Structure. See 3.3.272.5.

**3.3.182** Multiple Occupancy. See 3.3.190.11.

**3.3.183** Multiple Station Alarm Device. See 3.3.61.2.

**3.3.184** Multipurpose Assembly Occupancy. See 3.3.190.2.1.

**3.3.185** Net Floor Area. See 3.3.21.2.2.

**3.3.186** Non-Patient-Care Suite (Health Care Occupancies). See 3.3.273.2.

**3.3.187** Normally Unoccupied Building Service Equipment Support Area. See 3.3.21.6.

**3.3.188** Nursing Home. See 3.3.142.2.

**3.3.189\*** Objective. A requirement that needs to be met to achieve a goal. (SAF-FUN)

**3.3.190** Occupancy. The purpose for which a building or other structure, or part thereof, is used or intended to be used. [ASCE/SEI7:1.2] (SAF-FUN)

**3.3.190.1\*** *Ambulatory Health Care Occupancy.* An occupancy used to provide services or treatment simultaneously to four or more patients that provides, on an outpatient basis, one or more of the following: (1) treatment for patients that renders the patients incapable of taking action for self-preservation under emergency conditions without the assistance of others; (2) anesthesia that renders the patients incapable of taking action for self-preservation under emergency conditions without the assistance of others; (3) emergency or urgent care for patients who, due to the nature of their injury or illness, are incapable of taking action for self-preservation under emergency conditions without the assistance of others. (SAF-HEA)

**3.3.190.2\*** *Assembly Occupancy.* An occupancy (1) used for a gathering of 50 or more persons for deliberation, worship, entertainment, eating, drinking, amusement, awaiting transportation, or similar uses; or (2) used as a special amusement building, regardless of occupant load. (SAF-AXM)

**3.3.190.2.1** *Multipurpose Assembly Occupancy.* An assembly room designed to accommodate temporarily any of several possible assembly uses. (SAF-AXM)

**3.3.190.3\*** *Business Occupancy.* An occupancy used for the transaction of business other than mercantile. (SAF-MER)

**3.3.190.4\*** *Day-Care Occupancy.* An occupancy in which four or more clients receive care, maintenance, and supervision, by other than their relatives or legal guardians, for less than 24 hours per day. (SAF-END)

**3.3.190.5\*** *Detention and Correctional Occupancy.* An occupancy used to house one or more persons under varied degrees of restraint or security where such occupants are mostly incapable of self-preservation because of security measures not under the occupants' control. (SAF-DET)

**3.3.190.6\*** *Educational Occupancy.* An occupancy used for educational purposes through the twelfth grade by six or more persons for 4 or more hours per day or more than 12 hours per week. (SAF-END)

**3.3.190.7\*** *Health Care Occupancy.* An occupancy used to provide medical or other treatment or care simultaneously to four or more patients on an inpatient basis, where such patients are mostly incapable of self-preservation due to age, physical or mental disability, or because of security measures not under the occupants' control. (SAF-HEA)

**3.3.190.8\*** *Industrial Occupancy.* An occupancy in which products are manufactured or in which processing, assembling, mixing, packaging, finishing, decorating, or repair operations are conducted. (SAF-IND)

**3.3.190.8.1\*** *General Industrial Occupancy.* An industrial occupancy in which ordinary and low hazard industrial operations are conducted in buildings of conventional design suitable for various types of industrial processes. (SAF-IND)

**3.3.190.8.2\*** *High Hazard Industrial Occupancy.* An industrial occupancy in which industrial operations that include high hazard materials, processes, or contents are conducted. (SAF-IND)

**3.3.190.8.3** *Special-Purpose Industrial Occupancy.* An industrial occupancy in which ordinary and low hazard industrial operations are conducted in buildings designed for, and suitable only for, particular types of operations, characterized by a relatively low density of employee population, with much of the area occupied by machinery or equipment. (SAF-IND)

**3.3.190.9\*** *Mercantile Occupancy.* An occupancy used for the display and sale of merchandise. (SAF-MER)

**3.3.190.10** *Mixed Occupancy.* A multiple occupancy where the occupancies are intermingled. (SAF-FUN)

**3.3.190.11** *Multiple Occupancy.* A building or structure in which two or more classes of occupancy exist. (SAF-FUN)

Copyright 2018 National Fire Protection Association (NFPA®). Licensed, by agreement, for individual use and download on 01/14/2018 to Zimmerman Assoc for designated user Zimmerman. No other reproduction or transmission in any form permitted without written permission of NFPA. For inquiries or to report unauthorized use, contact licensing@nfpa.org.

**4.4.2.1** A prescriptive-based life safety design shall be in accordance with Chapters 1 through 4, Chapters 6 through 11, Chapter 43, and the applicable occupancy chapter, Chapters 12 through 42.

**4.4.2.2** Prescriptive-based designs meeting the requirements of Chapters 1 through 3, Sections 4.5 through 4.8, and Chapters 6 through 43 of this *Code* shall be deemed to satisfy the provisions of Sections 4.1 and 4.2.

**4.4.2.3** Where a requirement of this *Code* conflicts with another requirement of this *Code*, the following shall apply:

(1) *Where a specific requirement contained in Chapters 11 through 43 conflicts with a general requirement contained in Chapters 1 through 4 and Chapters 6 through 10, the requirement of Chapters 11 through 43 shall govern.

(2) *Where a requirement contained in Chapters 1 through 4 and Chapters 6 through 10 conflicts with another requirement contained in Chapters 1 through 4 and Chapters 6 through 10, the more specific requirement shall govern.

(3) *Where a requirement contained in Chapters 11 through 43 conflicts with another requirement contained in Chapters 11 through 43, the more specific requirement shall govern.

**4.4.3 Performance-Based Option.** A performance-based life safety design shall be in accordance with Chapters 1 through 5.

**4.5 Fundamental Requirements.**

**4.5.1 Multiple Safeguards.** The design of every building or structure intended for human occupancy shall be such that reliance for safety to life does not depend solely on any single safeguard. An additional safeguard(s) shall be provided for life safety in case any single safeguard is ineffective due to inappropriate human actions or system failure.

**4.5.2 Appropriateness of Safeguards.** Every building or structure shall be provided with means of egress and other fire and life safety safeguards of the kinds, numbers, locations, and capacities appropriate to the individual building or structure, with due regard to the following:

(1) Character of the occupancy, including fire load
(2) Capabilities of the occupants
(3) Number of persons exposed
(4) Fire protection available
(5) Capabilities of response personnel
(6) Height and construction type of the building or structure
(7) Other factors necessary to provide occupants with a reasonable degree of safety

**4.5.3 Means of Egress.**

**4.5.3.1 Number of Means of Egress.** Two means of egress, as a minimum, shall be provided in every building or structure, section, and area where size, occupancy, and arrangement endanger occupants attempting to use a single means of egress that is blocked by fire or smoke. The two means of egress shall be arranged to minimize the possibility that both might be rendered impassable by the same emergency condition.



**4.5.3.2 Unobstructed Egress.** In every occupied building or structure, means of egress from all parts of the building shall be maintained free and unobstructed. Means of egress shall be accessible to the extent necessary to ensure reasonable safety for occupants having impaired mobility.

**4.5.3.3 Awareness of Egress System.** Every exit shall be clearly visible, or the route to reach every exit shall be conspicuously indicated. Each means of egress, in its entirety, shall be arranged or marked so that the way to a place of safety is indicated in a clear manner.

**4.5.3.4 Lighting.** Where artificial illumination is needed in a building or structure, egress facilities shall be included in the lighting design.

**4.5.4\* Occupant Notification.** In every building or structure of such size, arrangement, or occupancy that a fire itself might not provide adequate occupant warning, fire alarm systems shall be provided where necessary to warn occupants of the existence of fire.

**4.5.5\* Situation Awareness.** Systems used to achieve the goals of Section 4.1 shall be effective in facilitating and enhancing situation awareness, as appropriate, by building management, other occupants and emergency responders of the functionality or state of critical building systems, the conditions that might warrant emergency response, and the appropriate nature and timing of such responses.

**4.5.6 Vertical Openings.** Every vertical opening between the floors of a building shall be suitably enclosed or protected, as necessary, to afford reasonable safety to occupants while using the means of egress and to prevent the spread of fire, smoke, or fumes through vertical openings from floor to floor before occupants have entered exits.

**4.5.7 System Design/Installation.** Any fire protection system, building service equipment, feature of protection, or safeguard provided to achieve the goals of this *Code* shall be designed, installed, and approved in accordance with applicable NFPA standards.

**4.5.8 Maintenance.** Whenever or wherever any device, equipment, system, condition, arrangement, level of protection, or any other feature is required for compliance with the provisions of this *Code*, such device, equipment, system, condition, arrangement, level of protection, or other feature shall thereafter be maintained, unless the *Code* exempts such maintenance.

**4.6 General Requirements.**

**4.6.1 Authority Having Jurisdiction.**

**4.6.1.1** The authority having jurisdiction shall determine whether the provisions of this *Code* are met.

**4.6.1.2** Any requirements that are essential for the safety of building occupants and that are not specifically provided for by this *Code* shall be determined by the authority having jurisdiction.

**4.6.1.3** Where it is evident that a reasonable degree of safety is provided, any requirement shall be permitted to be modified if, in the judgment of the authority having jurisdiction, its application would be hazardous under normal occupancy conditions.

**4.6.1.4 Technical Assistance.**

**4.6.1.4.1** The authority having jurisdiction shall be permitted to require a review by an approved independent third party with expertise in the matter to be reviewed at the submitter's expense. [1:1.15.1]

**4.6.1.4.2** The independent reviewer shall provide an evaluation and recommend necessary changes of the proposed design, operation, process, or new technology to the authority having jurisdiction. [1:1.15.2]

Copyright 2018 National Fire Protection Association (NFPA®). Licensed, by agreement, for individual use and download on 01/14/2018 to Zimmerman Assoc for designated user Zimmerman. No other reproduction or transmission in any form permitted without written permission of NFPA. For inquiries or to report unauthorized use, contact licensing@nfpa.org.

**7.1.5.2** The minimum ceiling height shall be maintained for not less than two-thirds of the ceiling area of any room or space, provided that the ceiling height of the remaining ceiling area is not less than 6 ft 8 in. (2030 mm).

**7.1.5.3** Headroom on stairs shall be not less than 6 ft 8 in. (2030 mm) and shall be measured vertically above a plane parallel to, and tangent with, the most forward projection of the stair tread.

**7.1.6 Walking Surfaces in the Means of Egress.**

**7.1.6.1 General.**

**7.1.6.1.1** Walking surfaces in the means of egress shall comply with 7.1.6.2 through 7.1.6.4.

**7.1.6.1.2** Approved existing walking surfaces shall be permitted.

**7.1.6.2 Changes in Elevation.** Abrupt changes in elevation of walking surfaces shall not exceed ¼ in. (6.3 mm). Changes in elevation exceeding ¼ in. (6.3 mm), but not exceeding ½ in. (13 mm), shall be beveled with a slope of 1 in 2. Changes in elevation exceeding ½ in. (13 mm) shall be considered a change in level and shall be subject to the requirements of 7.1.7.

**7.1.6.3 Level.**

**7.1.6.3.1** Walking surfaces shall comply with all of the following:

(1) Walking surfaces shall be nominally level.

(2) The slope of a walking surface in the direction of travel shall not exceed 1 in 20, unless the ramp requirements of 7.2.5 are met.

(3) The slope perpendicular to the direction of travel shall not exceed 1 in 48.

**7.1.6.3.2** Vehicle ramps in parking structures, as permitted in 42.8.2.2.6, and not on an accessible means of egress or other accessible element shall be exempt from the provisions of 7.1.6.3.1.

**7.1.6.4\* Slip Resistance.** Walking surfaces in the means of egress shall be slip resistant under foreseeable conditions.

**7.1.7 Changes in Level in Means of Egress.**

**7.1.7.1** Changes in level in means of egress shall be achieved by an approved means of egress where the elevation difference exceeds 21 in. (535 mm).

**7.1.7.2\*** Changes in level in means of egress not in excess of 21 in. (535 mm) shall be achieved either by a ramp complying with the requirements of 7.2.5 or by a stair complying with the requirements of 7.2.2.

**7.1.7.2.1** Where a ramp is used to meet the requirements of 7.1.7.2, the presence and location of ramped portions of walkways shall be readily apparent.

**7.1.7.2.2** Where a stair is used to meet the requirements of 7.1.7.2, the tread depth of such stair shall be not less than 13 in. (330 mm).

**7.1.7.2.3** Tread depth in industrial equipment access areas as provided in 40.2.5.3 shall be permitted.

**7.1.7.2.4** The presence and location of each step shall be readily apparent.

**7.1.8\* Guards.** Guards in accordance with 7.2.2.4 shall be provided at the open sides of means of egress that exceed 30 in. (760 mm) above the floor or the finished ground level below except where guards are specifically exempted by provisions of Chapters 11 through 43.

**7.1.9 Impediments to Egress.** Any device or alarm installed to restrict the improper use of a means of egress shall be designed and installed so that it cannot, even in case of failure, impede or prevent emergency use of such means of egress, unless otherwise provided in 7.2.1.6 and Chapters 18, 19, 22, and 23.

**7.1.10 Means of Egress Reliability.**

**7.1.10.1\* Maintenance.** Means of egress shall be continuously maintained free of all obstructions or impediments to full instant use in the case of fire or other emergency.

**7.1.10.2 Furnishings and Decorations in Means of Egress.**

**7.1.10.2.1** No furnishings, decorations, or other objects shall obstruct exits or their access thereto, egress there from, or visibility thereof.

**7.1.10.2.2** No obstruction by railings, barriers, or gates shall divide the means of egress into sections appurtenant to individual rooms, apartments, or other occupied spaces. Where the authority having jurisdiction finds the required path of travel to be obstructed by furniture or other movable objects, the authority shall be permitted to require that such objects be secured out of the way or shall be permitted to require that railings or other permanent barriers be installed to protect the path of travel against encroachment.

**7.1.10.2.3** Mirrors shall not be placed on exit door leaves. Mirrors shall not be placed in or adjacent to any exit in such a manner as to confuse the direction of egress.

**7.1.11 Sprinkler System Installation.** Where another provision of this chapter requires an automatic sprinkler system, the sprinkler system shall be installed in accordance with the subparts of 9.7.1.1 permitted by the applicable occupancy chapters.

**7.2 Means of Egress Components.**

**7.2.1 Door Openings.**

**7.2.1.1 General.**

**7.2.1.1.1** A door assembly in a means of egress shall conform to the general requirements of Section 7.1 and to the special requirements of 7.2.1.

**7.2.1.1.2** Every door opening and every principal entrance that is required to serve as an exit shall be designed and constructed so that the path of egress travel is obvious and direct. Windows that, because of their physical configuration or design and the materials used in their construction, have the potential to be mistaken for door openings shall be made inaccessible to the occupants by barriers or railings.

**7.2.1.1.3 Occupied Building.**

**7.2.1.1.3.1** For the purposes of Section 7.2, a building shall be considered to be occupied at any time it meets any of the following criteria:

(1) It is open for general occupancy.

(2) It is open to the public.

(3) It is occupied by more than 10 persons.

**7.2.1.1.3.2** Where means of egress doors are locked in a building that is not considered occupied, occupants shall not be locked beyond their control in buildings or building spaces, except for lockups in accordance with 22.4.5 and 23.4.5, detention and correctional occupancies, and health care occupancies.

Copyright 2018 National Fire Protection Association (NFPA®). Licensed, by agreement, for individual use and download on 01/14/2018 to Zimmerman Assoc for designated user Zimmerman. No other reproduction or transmission in any form permitted without written permission of NFPA®. For inquiries or to report unauthorized use, contact licensing@nfpa.org.

**7.2.2.3.6.5\*** All tread nosings of stairs utilizing the provision of 7.2.2.3.6.3 shall be marked in accordance with 7.2.2.5.4.3. Those portions of the marking stripe at locations where the riser height below the nosing is inconsistent by more than ³⁄₁₆ in. (4.8 mm), relative to other risers in the stair flight, shall be distinctively colored or patterned, incorporating safety yellow, to warn descending users of the inconsistent geometry relative to other steps in the flight.

**7.2.2.3.6.6** The variation in the horizontal projection of all nosings, including the projection of the landing nosing, shall not exceed ⅜ in. (9.5 mm) within each stair flight and, for other than existing nosings, shall not exceed ³⁄₁₆ in. (4.8 mm) between adjacent nosings.

**7.2.2.4 Guards and Handrails.**

**7.2.2.4.1 Handrails.**

**7.2.2.4.1.1** Stairs and ramps shall have handrails on both sides, unless otherwise permitted in 7.2.2.4.1.5 or 7.2.2.4.1.6.

**7.2.2.4.1.2** In addition to the handrails required at the sides of stairs by 7.2.2.4.1.1, both of the following provisions shall apply:

(1) For new stairs, handrails shall be provided within 30 in. (760 mm) of all portions of the required egress width.

(2) For existing stairs, handrails shall meet the following criteria:

  (a) They shall be provided within 44 in. (1120 mm) of all portions of the required egress width.

  (b) Such stairs shall not have their egress capacity adjusted to a higher occupant load than permitted by the capacity factor in Table 7.3.3.1 if the stair's clear width between handrails exceeds 60 in. (1525 mm).

**7.2.2.4.1.3** Where new intermediate handrails are provided in accordance with 7.2.2.4.1.2, the minimum clear width between handrails shall be 20 in. (510 mm).

**7.2.2.4.1.4\*** The required egress width shall be provided along the natural path of travel.

**7.2.2.4.1.5** If a single step or a ramp is part of a curb that separates a sidewalk from a vehicular way, it shall not be required to have a handrail.

**7.2.2.4.1.6** Existing stairs, existing ramps, stairs within dwelling units and within guest rooms, and ramps within dwelling units and guest rooms shall be permitted to have a handrail on one side only.

**7.2.2.4.2 Continuity.** Required guards and handrails shall continue for the full length of each flight of stairs. At turns of new stairs, inside handrails shall be continuous between flights at landings.

**7.2.2.4.3 Projections.** The design of guards and handrails and the hardware for attaching handrails to guards, balusters, or walls shall be such that there are no projections that might engage loose clothing. Openings in guards shall be designed to prevent loose clothing from becoming wedged in such openings.

**7.2.2.4.4 Direction.** For standard stairs, at least one handrail shall be installed at a right angle to the leading edge of the stair treads.

**7.2.2.4.5\* Handrail Details.**

**7.2.2.4.5.1** New handrails on stairs shall be not less than 34 in. (865 mm), and not more than 38 in. (965 mm), above the surface of the tread, measured vertically to the top of the rail from the leading edge of the tread.

**7.2.2.4.5.2** Existing required handrails shall be not less than 30 in. (760 mm), and not more than 38 in. (965 mm), above the surface of the tread, measured vertically to the top of the rail from the leading edge of the tread.

**7.2.2.4.5.3** The height of required handrails that form part of a guard shall be permitted to exceed 38 in. (965 mm), but shall not exceed 42 in. (1065 mm), measured vertically to the top of the rail from the leading edge of the tread.

**7.2.2.4.5.4\*** Additional handrails that are lower or higher than the main handrail shall be permitted.

**7.2.2.4.5.5** New handrails shall be installed to provide a clearance of not less than 2¼ in. (57 mm) between the handrail and the wall to which it is fastened.

**7.2.2.4.5.6** Handrails shall include one of the following features:

(1) Circular cross section with an outside diameter of not less than 1¼ in. (32 mm) and not more than 2 in. (51 mm)

(2) \*Shape that is other than circular with a perimeter dimension of not less than 4 in. (100 mm), but not more than 6¼ in. (160 mm), and with the largest cross-sectional dimension not more than 2¼ in. (57 mm), provided that graspable edges are rounded so as to provide a radius of not less than ⅛ in. (3.2 mm)

**7.2.2.4.5.7** New handrails shall be continuously graspable along their entire length.

**7.2.2.4.5.8** Handrail brackets or balusters attached to the bottom surface of the handrail shall not be considered to be obstructions to grasp ability, provided that both of the following criteria are met:

(1) They do not project horizontally beyond the sides of the handrail within 1½ in. (38 mm) of the bottom of the handrail and provided that, for each additional ½ in. (13 mm) of handrail perimeter dimension greater than 4 in. (100 mm) , the vertical clearance dimension of 1½ in. (38 mm) is reduced by ⅛ in. (3.2 mm).

(2) They have edges with a radius of not less than 0.01 in. (0.25 mm).

**7.2.2.4.5.9** New handrail ends shall be returned to the wall or floor or shall terminate at newel posts.

**7.2.2.4.5.10** In other than dwelling units, new handrails that are not continuous between flights shall extend horizontally, at the required height, not less than 12 in. (305 mm) beyond the top riser and continue to slope for a depth of one tread beyond the bottom riser.

**7.2.2.4.5.11** Within dwelling units, handrails shall extend, at the required height, to at least those points that are directly above the top and bottom risers.

**7.2.2.4.6 Guard Details.** See 7.1.8 for guard requirements.

Copyright 2018 National Fire Protection Association (NFPA®). Licensed, by agreement, for individual use and download on 01/14/2018 to Zimmerman Assoc for designated user Zimmerman. No other reproduction or transmission in any form permitted without written permission of NFPA. For inquiries or to report unauthorized use, contact licensing@nfpa.org.

other components of an exit discharge shall comply with the detailed requirements of this chapter for such components.

**7.7.5 Signs.** See 7.2.2.5.4.

**7.7.6 Discharge to Roofs.** Where approved by the authority having jurisdiction, exits shall be permitted to discharge to roofs or other sections of the building or an adjoining building where all of the following criteria are met:

(1) The roof/ceiling assembly construction has a fire resistance rating not less than that required for the exit enclosure.

(2) A continuous and safe means of egress from the roof is available.

**7.8 Illumination of Means of Egress.**

**7.8.1 General.**

**7.8.1.1\*** Illumination of means of egress shall be provided in accordance with Section 7.8 for every building and structure where required in Chapters 11 through 43. For the purposes of this requirement, exit access shall include only designated stairs, aisles, corridors, ramps, escalators, and passageways leading to an exit. For the purposes of this requirement, exit discharge shall include only designated stairs, aisles, corridors, ramps, escalators, walkways, and exit passageways leading to a public way.

**7.8.1.2** Illumination of means of egress shall be continuous during the time that the conditions of occupancy require that the means of egress be available for use, unless otherwise provided in 7.8.1.2.2.

**7.8.1.2.1** Artificial lighting shall be employed at such locations and for such periods of time as are necessary to maintain the illumination to the minimum criteria values herein specified.

**7.8.1.2.2\*** Unless prohibited by Chapters 11 through 43, automatic lighting control devices shall be permitted to temporarily turn off the illumination within the means of egress, provided that each lighting control device complies with all of the following:

(1) In new installations, the lighting control device is listed.

(2) The lighting control device is equipped to automatically energize the controlled lights upon loss of normal power and is evaluated for this purpose.

(3) Illumination timers are provided and are set for a minimum 15-minute duration.

(4) The lighting control device is activated by any occupant movement in the area served by the lighting units.

(5) In new installations, the lighting control device is activated by activation of the building fire alarm system, if provided.

(6) The lighting control device does not turn off any lights relied upon for activation of photoluminescent exit signs or path markers.

(7) The lighting control device does not turn off any battery-equipped emergency luminaires, unit equipment, or exit signs.

**7.8.1.2.3\*** Energy-saving sensors, switches, timers, or controllers shall be approved and shall not compromise the continuity of illumination of the means of egress required by 7.8.1.2.

**7.8.1.3** The floors and other walking surfaces within an exit and within the portions of the exit access and exit discharge designated in 7.8.1.1 shall be illuminated as follows:

(1) During conditions of stair use, the minimum illumination for new stairs shall be at least 10 ft-candle (108 lux), measured at the walking surfaces.

(1) The minimum illumination for floors and other walking surfaces, other than new stairs during conditions of stair use, shall be to values of at least 1 ft-candle (10.8 lux), measured at the floor.

(3) In assembly occupancies, the illumination of the walking surfaces of exit access shall be at least 0.2 ft-candle (2.2 lux) during periods of performances or projections involving directed light.

(4)\* The minimum illumination requirements shall not apply where operations or processes require low lighting levels.

**7.8.1.4\*** Required illumination shall be arranged so that the failure of any single lighting unit does not result in an illumination level of less than 0.2 ft-candle (2.2 lux) in any designated area.

**7.8.1.5** The equipment or units installed to meet the requirements of Section 7.10 also shall be permitted to serve the function of illumination of means of egress, provided that all requirements of Section 7.8 for such illumination are met.

**7.8.2 Sources of Illumination.**

**7.8.2.1** Illumination of means of egress shall be from a source considered reliable by the authority having jurisdiction.

**7.8.2.2** Battery-operated electric lights and other types of portable lamps or lanterns shall not be used for primary illumination of means of egress. Battery-operated electric lights shall be permitted to be used as an emergency source to the extent permitted under Section 7.9.

**7.9 Emergency Lighting.**

**7.9.1 General.**

**7.9.1.1\*** Emergency lighting facilities for means of egress shall be provided in accordance with Section 7.9 for the following:

(1) Buildings or structures where required in Chapters 11 through 43

(2) Underground and limited access structures as addressed in Section 11.7

(3) High-rise buildings as required by other sections of this *Code*

(4) Doors equipped with delayed-egress locks

(5) Stair shafts and vestibules of smokeproof enclosures, for which the following also apply:

    (a) The stair shaft and vestibule shall be permitted to include a standby generator that is installed for the smokeproof enclosure mechanical ventilation equipment.

    (b) The standby generator shall be permitted to be used for the stair shaft and vestibule emergency lighting power supply.

(6) New access-controlled egress doors in accordance with 7.2.1.6.2

**7.9.1.2** For the purposes of 7.9.1.1, exit access shall include only designated stairs, aisles, corridors, ramps, escalators, and passageways leading to an exit. For the purposes of 7.9.1.1, exit discharge shall include only designated stairs, ramps, aisles, walkways, and escalators leading to a public way.

**7.9.1.3** Where maintenance of illumination depends on changing from one energy source to another, a delay of not more than 10 seconds shall be permitted.

**7.9.2 Performance of System.**

**7.9.2.1** Emergency illumination shall be provided for a minimum of 1½ hours in the event of failure of normal lighting.

**7.9.2.1.1** Emergency lighting facilities shall be arranged to provide initial illumination that is not less than an average of 1 ft-candle (10.8 lux) and, at any point, not less than 0.1 ft-candle (1.1 lux) , measured along the path of egress at floor level.

**7.9.2.1.2** Illumination levels shall be permitted to decline to not less than an average of 0.6 ft-candle (6.5 lux) and, at any point, not less than 0.06 ft-candle (0.65 lux) at the end of 1½ hours.

**Designation: F1637 – 13**

An American National Standard

# Standard Practice for
# Safe Walking Surfaces[1]

This standard is issued under the fixed designation F1637; the number immediately following the designation indicates the year of original adoption or, in the case of revision, the year of last revision. A number in parentheses indicates the year of last reapproval. A superscript epsilon (ε) indicates an editorial change since the last revision or reapproval.

## 1. Scope

1.1 This practice covers design and construction guidelines and minimum maintenance criteria for new and existing buildings and structures. This practice is intended to provide reasonably safe walking surfaces for pedestrians wearing ordinary footwear. These guidelines may not be adequate for those with certain mobility impairments.

1.2 Conformance with this practice will not alleviate all hazards; however, conformance will reduce certain pedestrian risks.

1.3 The values stated in inch-pound units are to be regarded as standard. The values given in parentheses are mathematical conversions to SI units that are provided for information only and are not considered standard.

1.4 *This standard does not purport to address all of the safety concerns, if any, associated with its use. It is the responsibility of the user of this standard to establish appropriate safety and health practices and determine the applicability of regulatory limitations prior to use.*

## 2. Referenced Documents

2.1 *ASTM Standards:*[2]
F1646 Terminology Relating to Safety and Traction for Footwear

## 3. Terminology

3.1 See Terminology F1646 for the following terms used in this practice:
3.1.1 Bollard,
3.1.2 Carpet,
3.1.3 Cross slope,
3.1.4 Element,
3.1.5 Fair,

3.1.6 Footwear,
3.1.7 Foreseeable pedestrian path,
3.1.8 Planar,
3.1.9 Ramp,
3.1.10 Sidewalk,
3.1.11 Slip resistance,
3.1.12 Slip resistant,
3.1.13 Walkway.
3.1.14 Walkway surface hardware, and

## 4. Significance and Use

4.1 This practice addresses elements along and in walkways including floors and walkway surfaces, sidewalks, short flight stairs, gratings, wheel stops, and speed bumps. Swimming pools, bath tubs, showers, natural walks, and unimproved paths are beyond the scope of this practice.

## 5. Walkway Surfaces

5.1 *General:*
5.1.1 Walkways shall be stable, planar, flush, and even to the extent possible. Where walkways cannot be made flush and even, they shall conform to the requirements of 5.2 and 5.3.

5.1.2 Walkway surfaces for pedestrians shall be capable of safely sustaining intended loads.

5.1.3 Walkway surfaces shall be slip resistant under expected environmental conditions and use. Painted walkways shall contain an abrasive additive, cross cut grooving, texturing or other appropriate means to render the surface slip resistant where wet conditions may be reasonably foreseeable.

5.1.4 Interior walkways that are not slip resistant when wet shall be maintained dry during periods of pedestrian use.

5.2 *Walkway Changes in Level:*
5.2.1 Adjoining walkway surfaces shall be made flush and fair, whenever possible and for new construction and existing facilities to the extent practicable.

5.2.2 Changes in levels up to ¼ in. (6 mm) may be vertical and without edge treatment. (See Fig. 1.)

5.2.3 Changes in levels between ¼ and ½ in. (6 and 12 mm) shall be beveled with a slope no greater than 1:2 (rise:run).

5.2.4 Changes in levels greater than ½ in. (12 mm) shall be transitioned by means of a ramp or stairway that complies with applicable building codes, regulations, standards, or ordinances, or all of these.

[1] This practice is under the jurisdiction of ASTM Committee F13 on Pedestrian/ Walkway Safety and Footwear and is the direct responsibility of Subcommittee F13.50 on Walkway Surfaces.
Current edition approved Aug. 1, 2013. Published August 2013. Originally approved in 1995. Last previous edition approved in 2010 as F1637 – 10. DOI: 10.1520/F1637-13.
[2] For referenced ASTM standards, visit the ASTM website, www.astm.org, or contact ASTM Customer Service at service@astm.org. For *Annual Book of ASTM Standards* volume information, refer to the standard's Document Summary page on the ASTM website.

Copyright © ASTM International, 100 Barr Harbor Drive, PO Box C700, West Conshohocken, PA 19428-2959. United States

Copyright by ASTM Int'l (all rights reserved); Mon Sep 9 15:07:55 EDT 2013
Downloaded/printed by
Chris Zimmerman (ZimmermanAssociates) pursuant to License Agreement. No further reproductions authorized.

1

**F1637 – 13**



FIG. 1 Changes in Levels up to a Maximum of ¼ in. (6 mm)

5.3 *Carpet:*

5.3.1 Carpet shall be maintained so as not to create pedestrian hazard. Carpet shall be firmly secured and seams tightly maintained. Carpet shall not have loose or frayed edges, unsecured seams, worn areas, holes, wrinkles or other hazards that may cause trip occurrence.

5.3.2 Carpet on floor surfaces shall be routinely inspected. Periodic restretching may become necessary. Periodic inspection is particularly important at step nosing edges.

5.3.3 Carpet and carpet trim (as measured when compressed) shall meet the transition requirements of 5.2.

5.3.4 Shag-type carpet shall not be used on stair treads. Carpeting should be firmly secured onto the tread and around the nosing.

5.4 *Mats and Runners:*

5.4.1 Mats, runners, or other means of ensuring that building entrances and interior walkways are kept dry shall be provided, as needed, during inclement weather. Replacement of mats or runners may be necessary when they become saturated.

5.4.2 Building entrances shall be provided with mats or runners, or other means to help remove foreign particles and other contaminants from the bottom of pedestrian footwear. Mats should be provided to minimize foreign particles, that may become dangerous to pedestrians particularly on hard smooth floors, from being tracked on floors.

5.4.3 Mats or runners should be provided at other wet or contaminated locations, particularly at known transitions from dry locations. Mats at building entrances also may be used to control the spread of precipitation onto floor surfaces, reducing the likelihood of the floors becoming slippery.

5.4.4 Mats shall be of sufficient design, area, and placement to control tracking of contaminants into buildings. Safe practice requires that mats be installed and maintained to avoid tracking water off the last mat onto floor surfaces.

5.4.5 Mats, runners, and area rugs shall be provided with safe transition from adjacent surfaces and shall be fixed in place or provided with slip resistant backing.

5.4.6 Mats, runners, and area rugs shall be maintained so as not to create pedestrian hazards. Mats, runners, and area rugs shall not have loose or frayed edges, worn areas, holes, wrinkles, or other hazards that may cause trip occurrences.

5.5 *Illumination:*

5.5.1 Minimum walkway illumination shall be governed by the requirements of local codes and ordinances or, in their absence, by the recommendations set forth by the Illuminating Engineering Society of North America (IES) (Application and Reference Volumes).

5.5.2 Illumination shall be designed to be glare free.

5.5.3 Illumination shall be designed to avoid casting of obscuring shadows on walkways, including shadows on stairs that may be cast by users.

5.5.4 Interior and exterior pedestrian use areas, including parking lots, shall be properly illuminated during periods when pedestrians may be present.

5.6 *Headroom*—A minimum headroom clearance of 6 ft 8 in. (2.03 m), measured from the walkway surface, shall be provided above all parts of the walkway. Where such clearance is not provided in existing structures, the low clearance portions of the walkway shall be safely padded, marked with safety contrast color coding and posted with appropriate warning signs.

5.7 *Exterior Walkways:*

5.7.1 Exterior walkways shall be maintained so as to provide safe walking conditions.

5.7.1.1 Exterior walkways shall be slip resistant.

5.7.1.2 Exterior walkway conditions that may be considered substandard and in need of repair include conditions in which the pavement is broken, depressed, raised, undermined, slippery, uneven, or cracked to the extent that pieces may be readily removed.

5.7.2 Exterior walkways shall be repaired or replaced where there is an abrupt variation in elevation between surfaces. Vertical displacements in exterior walkways shall be transitioned in accordance with 5.2.

5.7.3 Edges of sidewalk joints shall be rounded.

## 6. Walking Surface Hardware

6.1 Walking surface hardware within foreseeable pedestrian paths shall be maintained flush with the surrounding surfaces; variances between levels shall be transitioned in accordance with 5.2.

6.2 Walking surface hardware within foreseeable pedestrian paths shall be maintained slip resistant.

6.3 Walking surface hardware shall be installed and maintained so as to be stable under reasonable foreseeable loading.

## 7. Stairs

7.1 *General:*

7.1.1 Stairways with "distracting" forward or side views shall be avoided. A "distracting" view is one which can attract the stair user's attention, (for example, advertisements, store displays), thus distracting the stair user.

7.1.2 Step nosings shall be readily discernible, slip resistant, and adequately demarcated. Random, pictorial, floral, or geometric designs are examples of design elements that can camouflage a step nosing.

7.1.3 Doors shall not open over stairs.

7.1.4 Structure (reserved).

7.2 *Short Flight Stairs (Three or Fewer Risers):*

7.2.1 Short flight stairs shall be avoided where possible.

7.2.2 In situations where a short flight stair or single step transition exists or cannot be avoided, obvious visual cues shall be provided to facilitate improved step identification. Handrails, delineated nosing edges, tactile cues, warning signs, contrast in surface colors, and accent lighting are examples of some appropriate warning cues.

Copyright by ASTM Int'l (all rights reserved); Mon Sep  9 15:07:55 EDT 2013
Downloaded/printed by
Chris Zimmerman (ZimmermanAssociates) pursuant to License Agreement. No further reproductions authorized.

F1637 – 13

## 8. Speed Bumps

8.1 Design to avoid the use of speed bumps.

8.2 All speed bumps which are in foreseeable pedestrian paths shall comply with 5.2 (walkway changes in level).

8.3 Existing speed bumps, that do not conform to 5.2, shall be clearly marked with safety color coding to contrast with surroundings. Painted speed bumps shall be slip resistant. Pedestrian **CAUTION** signs are recommended.

## 9. Wheel Stops

9.1 Parking lots should be designed to avoid the use of wheel stops.

9.2 Wheel stops shall not be placed in pedestrian walkways or foreseeable pedestrian paths.

9.3 Wheel stops shall be in contrast with their surroundings.

9.4 Wheel stops shall be no longer than 6 ft (1.83 m) and shall be placed in the center of parking stalls. The minimum width of pedestrian passage between wheel stops shall be 3 ft (0.91 m).

9.5 The top of wheel stops shall not exceed 6.5 in. (165 mm) in height above the parking lot surface.

9.6 Adequate illumination shall be maintained at wheel stops as governed by the requirements of local codes and ordinances or, in their absence, by the recommendations set forth by the Illuminating Engineering Society of North America (IES-Application and Reference Volumes).

9.7 Bollards, not less than 3 ft 6 in. (1.07 m) height, may be placed in the center of parking stalls as an alternative to wheel stops. Bollards should be appropriately marked to enhance visibility.

## 10. Gratings

10.1 Gratings used in public areas should be located outside of pedestrian walkways.

10.2 Gratings located in foreseeable pedestrian walkways shall not have openings wider than ½ in. (13 mm) in the direction of predominant travel.

10.2.1 *Exemption*—The requirements of 10.2 do not apply in areas where footwear worn is controlled (for example, industrial areas).

10.3 Gratings with elongated openings shall be placed with the long dimension perpendicular to the direction of predominant travel.

10.4 Gratings shall be maintained slip resistant.

## 11. Warnings

11.1 The use of visual cues such as warnings, accent lighting, handrails, contrast painting, and other cues to improve the safety of walkway transitions are recognized as effective controls in some applications. However, such cues or warnings do not necessarily negate the need for safe design and construction.

11.2 When relying on applications of color as a warning, provide colors and patterns that provide conspicuous markings for the conditions being delineated, their surroundings, and the environment in which they will be viewed by users. Bright yellow is a commonly used color for alerting users of the presence of certain walkway conditions. When properly applied and maintained, other colors can also provide effective warnings.

## 12. Keywords

12.1 carpet; floors; gratings; mats; runners; sidewalks; short flight stairs; slip resistance; speed bump; stairs; walkway; wheel stop

*ASTM International takes no position respecting the validity of any patent rights asserted in connection with any item mentioned in this standard. Users of this standard are expressly advised that determination of the validity of any such patent rights, and the risk of infringement of such rights, are entirely their own responsibility.*

*This standard is subject to revision at any time by the responsible technical committee and must be reviewed every five years and if not revised, either reapproved or withdrawn. Your comments are invited either for revision of this standard or for additional standards and should be addressed to ASTM International Headquarters. Your comments will receive careful consideration at a meeting of the responsible technical committee, which you may attend. If you feel that your comments have not received a fair hearing you should make your views known to the ASTM Committee on Standards, at the address shown below.*

*This standard is copyrighted by ASTM International, 100 Barr Harbor Drive, PO Box C700, West Conshohocken, PA 19428-2959, United States. Individual reprints (single or multiple copies) of this standard may be obtained by contacting ASTM at the above address or at 610-832-9585 (phone), 610-832-9555 (fax), or service@astm.org (e-mail); or through the ASTM website (www.astm.org). Permission rights to photocopy the standard may also be secured from the ASTM website (www.astm.org/ COPYRIGHT/).*

Copyright by ASTM Int'l (all rights reserved); Mon Sep  9 15:07:55 EDT 2013
Downloaded/printed by
Chris Zimmerman (ZimmermanAssociates) pursuant to License Agreement. No further reproductions authorized.

**7.2.2.2.3 Spiral Stairs.**

**7.2.2.2.3.1** Where specifically permitted for individual occupancies by Chapters 11 through 43, spiral stairs shall be permitted as a component in a means of egress in accordance with 7.2.2.2.3.2 through 7.2.2.2.3.4.

**7.2.2.2.3.2** Spiral stairs shall be permitted, provided that all of the following criteria are met:

(1) Riser heights shall not exceed 7 in. (180 mm).

(2) The stairway shall have a tread depth of not less than 11 in. (280 mm) for a portion of the stairway width sufficient to provide egress capacity for the occupant load served in accordance with 7.3.3.1.

(3) At the outer side of the stairway, an additional 10½ in. (265 mm) of width shall be provided clear to the other handrail, and this width shall not be included as part of the required egress capacity.

(4) Handrails complying with 7.2.2.4 shall be provided on both sides of the spiral stairway.

(5) The inner handrail shall be located within 24 in. (610 mm), measured horizontally, of the point where a tread depth of not less than 11 in. (280 mm) is provided.

(6) The turn of the stairway shall be such that the outer handrail is at the right side of descending users.

**F  7.2.2.2.3.3** Where the occupant load served does not exceed ~~three~~ five,
**L** spiral stairs shall be permitted, provided that all of the following criteria are met:

(1) The clear width of the stairs shall be not less than 26 in. (660 mm).

(2) The height of risers shall not exceed 9½ in. (240 mm).

(3) The headroom shall be not less than 6 ft 6 in. (1980 mm).

(4) Treads shall have a depth not less than 7½ in. (190 mm) at a point 12 in. (305 mm) from the narrower edge.

(5) All treads shall be identical.

(6) Handrails shall be provided on both sides of the stairway.

**7.2.2.2.3.4** Where the occupant load served does not exceed five, existing spiral stairs shall be permitted, provided that the requirements of 7.2.2.2.3.3(1) through (5) are met.

**7.2.2.2.4\* Winders.**

**7.2.2.2.4.1** Where specified in Chapters 11 through 43, winders shall be permitted in stairs, provided that they meet the requirements of 7.2.2.2.4.2 and 7.2.2.2.4.3.

**7.2.2.2.4.2** New winders shall have a tread depth of not less than 6 in. (150 mm) and a tread depth of not less than 11 in. (280 mm) at a point 12 in. (305 mm) from the narrowest edge.

**7.2.2.2.4.3** Existing winders shall be permitted to be continued in use, provided that they have a tread depth of not less than 6 in. (150 mm) and a tread depth of not less than 9 in. (230 mm) at a point 12 in. (305 mm) from the narrowest edge.

**7.2.2.3 Stair Details.**

**7.2.2.3.1 Construction.**

**7.2.2.3.1.1** All stairs serving as required means of egress shall be of permanent fixed construction, unless they are stairs serving seating that is designed to be repositioned in accordance with Chapters 12 and 13.

**7.2.2.3.1.2** Each stair, platform, and landing, not including handrails and existing stairs, in buildings required in this *Code* to be of Type I or Type II construction shall be of noncombustible material throughout.

**7.2.2.3.2 Landings.**

**7.2.2.3.2.1** Stairs shall have landings at door openings, except as permitted in 7.2.2.3.2.5.

**7.2.2.3.2.2** Stairs and intermediate landings shall continue with no decrease in width along the direction of egress travel.

**7.2.2.3.2.3** In new buildings, every landing shall have a dimension, measured in the direction of travel, that is not less than the width of the stair.

**7.2.2.3.2.4** Landings shall not be required to exceed 48 in. (1220 mm) in the direction of travel, provided that the stair has a straight run.

**7.2.2.3.2.5** In existing buildings, a door assembly at the top of a stair shall be permitted to open directly to the stair, provided that the door leaf does not swing over the stair and the door opening serves an area with an occupant load of fewer than 50 persons.

**7.2.2.3.3 Tread and Landing Surfaces.**

**7.2.2.3.3.1** Stair treads and landings shall be solid, without perforations, unless otherwise permitted in 7.2.2.3.5.

**7.2.2.3.3.2\*** Stair treads and landings shall be free of projections or lips that could trip stair users.

**7.2.2.3.3.3\*** Stair treads and landings within the same stairway shall have consistent surface traction.

**7.2.2.3.3.4** If not vertical, risers on other than existing stairs shall be permitted to slope under the tread at an angle not to exceed 30 degrees from vertical, provided that the projection of the nosing does not exceed 1½ in. (38 mm).

**7.2.2.3.3.5** The requirement of 7.2.2.3.3.1 shall not apply to noncombustible grated stair treads and landings in the following occupancies:

(1) Assembly occupancies as otherwise provided in Chapters 12 and 13

(2) Detention and correctional occupancies as otherwise provided in Chapters 22 and 23

(3) Industrial occupancies as otherwise provided in Chapter 40

(4) Storage occupancies as otherwise provided in Chapter 42

**7.2.2.3.4\* Tread and Landing Slope.** The tread and landing slope shall not exceed ¼ in./ft (21 mm/m) (a slope of 1 in 48).

**7.2.2.3.5\* Riser Height and Tread Depth.** Riser height shall be measured as the vertical distance between tread nosings. Tread depth shall be measured horizontally, between the vertical planes of the foremost projection of adjacent treads and at a right angle to the tread's leading edge, but shall not include beveled or rounded tread surfaces that slope more than 20 degrees (a slope of 1 in 2.75). At tread nosings, such beveling or rounding shall not exceed ½ in. (13 mm) in horizontal dimension.

**7.2.2.3.6\* Dimensional Uniformity.**

**7.2.2.3.6.1** Variation in excess of ³⁄₁₆ in. (4.8 mm) in the sizes of adjacent tread depths or in the height of adjacent risers shall be prohibited, unless otherwise permitted in 7.2.2.3.6.3.

**7.2.2.3.6.2** The variation between the sizes of the largest and smallest riser or between the largest and smallest tread depths shall not exceed ⅜ in. (9.5 mm) in any flight.

**7.2.2.3.6.3** Where the bottom or top riser adjoins a sloping public way, walk, or driveway having an established finished ground level and serves as a landing, the bottom or top riser shall be permitted to have a variation in height of not more than 1 in. in every 12 in. (25 mm in every 305 mm) of stairway width.

**7.2.2.3.6.4** The size of the variations addressed by 7.2.2.3.6.1, 7.2.2.3.6.2, and 7.2.2.3.6.3 shall be based on the nosing-to-nosing dimensions of the tread depths and riser heights, consistent with the measurement details set out in 7.2.2.3.5.

CITY OF ST. CLOUD, FLORIDA CHARTER AND RELATED LAWS CITY CODE AND LAND DEVELOPMENT CODE

_____

Published in 2009 by Order of the City Council

_____

Adopted February 11, 2010

_____

# municode

★

Municipal Code Corporation  P.O. Box 2235 Tallahassee, FL 32316
info@municode.com    800.262.2633    www.municode.com

CURRENT OFFICIALS

of the

CITY OF

ST. CLOUD, FLORIDA

_____

Nathan Blackwell

*Mayor*

_____

Linette R. Matheny

*Deputy Mayor*

_____

Chuck Cooper

Dave Askew

Keith Trace

ARTICLE II. - TECHNICAL CODES

Sec. 10-33. - International Property Maintenance Code adopted.

> (a) *Adoption.* The 2009 edition of the International Property Maintenance Code as adopted by the International Code Council, and any amendments or successor code thereto, is hereby adopted and such code shall be in force and in effect as if fully set out in this article except as amended as set forth in subsection (b) of this section. Copies of the 2009 International Property Maintenance Code, and any amendments or successor code thereto, shall be on file in the office of the building official. Any reference to the Standard Unsafe Building Abatement Code contained in the city Code or the Land Development Code shall be construed and serve as a reference to the International Property Maintenance Code as adopted herein. All references to the International Codes will mean the current edition of the Florida building, electrical and fire codes in force at the time.

> (b) *Amendments.* The following amendments to the International Property Maintenance Code are hereby adopted:

> *Section 101.1. Title.* The jurisdiction shall be the City of St. Cloud.

> *Section 103.5. Fees.* The fee schedule shall be such fees as adopted by resolution of the city council and on file in the office of the city clerk.

> *Section 302.4. Weeds.* All premises and exterior property shall be maintained free from weeds and plant growth in excess of eight inches for an improved lot and 12 inches for a vacant lot.

> *Section 304.14. Insert screens.* The applicable period shall be January 1 though and including December 31.

> *Section 602.3. Heat supply.* The applicable period shall be January 1 though and including December 31.

> *Section 602.4. Occupiable work spaces.* The applicable period shall be January 1 though and including December 31.

(Code 1994, §§ 14-66, 14-67; Ord. No. 92-P-1, § II(7-2, 7-4), 8-13-1992; Ord. No. 2009-13, § 1, 5-28-2009)

Sec. 10-34. - Local administrative amendments to Florida Building Code.

**2 0 1 8**

I N T E R N A T I O N A L   C O D E S®

**2018 I-CODE BONUS OFFER**

Get a **free 45-day online subscription** to ICC's *premiumACCESS* 2018 I-Codes Complete Collection. Test drive many powerful, time-saving tools available to you from *premiumACCESS*. To activate your bonus, visit **www.iccsafe.org/codebonus**.

# IPMC®

A Member of the International Code Family®

INTERNATIONAL
**PROPERTY MAINTENANCE** CODE®



INTERNATIONAL **CODE COUNCIL**®

Copyright © 2017 ICC. ALL RIGHTS RESERVED. Accessed by Andres Correa (ahcorrea us@gmail.com), (-) Order Number #100011672 on Nov 7, 2018 12:55:52 PM pursuant to License Agreement with ICC. No further reproduction or distribution authorized. Single user only, copying and networking prohibited. ANY UNAUTHORIZED REPRODUCTION OR DISTRIBUTION IS A VIOLATION OF

# CHAPTER 1

# SCOPE AND ADMINISTRATION

---

**User note:**

*About this chapter: Chapter 1 establishes the limits of applicability of the code and describes how the code is to be applied and enforced. Chapter 1 is in two parts: Part 1—Scope and Application (Sections 101 and 102) and Part 2—Administration and Enforcement (Sections 103 – 112). Section 101 identifies which buildings and structures come under its purview and references other I-Codes as applicable.*

*This code is intended to be adopted as a legally enforceable document and it cannot be effective without adequate provisions for its administration and enforcement. The provisions of Chapter 1 establish the authority and duties of the code official appointed by the authority having jurisdiction and also establish the rights and privileges of the property owner and building occupants.*

---

## PART 1 — SCOPE AND APPLICATION

### SECTION 101
### GENERAL

**[A] 101.1 Title.** These regulations shall be known as the *International Property Maintenance Code* of **[NAME OF JURISDICTION]**, hereinafter referred to as "this code."

**[A] 101.2 Scope.** The provisions of this code shall apply to all existing residential and nonresidential structures and all existing *premises* and constitute minimum requirements and standards for *premises*, structures, equipment and facilities for light, *ventilation*, space, heating, sanitation, protection from the elements, a reasonable level of safety from fire and other hazards, and for a reasonable level of sanitary maintenance; the responsibility of *owners*, an owner's authorized agent, *operators* and *occupants*; the *occupancy* of existing structures and *premises*, and for administration, enforcement and penalties.

**[A] 101.3 Intent.** This code shall be construed to secure its expressed intent, which is to ensure public health, safety and welfare insofar as they are affected by the continued *occupancy* and maintenance of structures and *premises*. Existing structures and *premises* that do not comply with these provisions shall be altered or repaired to provide a minimum level of health and safety as required herein.

**[A] 101.4 Severability.** If a section, subsection, sentence, clause or phrase of this code is, for any reason, held to be unconstitutional, such decision shall not affect the validity of the remaining portions of this code.

### SECTION 102
### APPLICABILITY

**[A] 102.1 General.** Where there is a conflict between a general requirement and a specific requirement, the specific requirement shall govern. Where differences occur between provisions of this code and the referenced standards, the provisions of this code shall apply. Where, in a specific case, different sections of this code specify different requirements, the most restrictive shall govern.

**102.2 Maintenance.** Equipment, systems, devices and safeguards required by this code or a previous regulation or code under which the structure or *premises* was constructed, altered or repaired shall be maintained in good working order. An *owner*, owner's authorized agent, *operator* or *occupant* shall not cause any service, facility, equipment or utility that is required under this section to be removed from, shut off from or discontinued for any occupied dwelling, except for such temporary interruption as necessary while repairs or alterations are in progress. The requirements of this code are not intended to provide the basis for removal or abrogation of fire protection and safety systems and devices in existing structures. Except as otherwise specified herein, the *owner* or the *owner's* authorized agent shall be responsible for the maintenance of buildings, structures and *premises*.

**[A] 102.3 Application of other codes.** Repairs, additions or alterations to a structure, or changes of *occupancy*, shall be done in accordance with the procedures and provisions of the *International Building Code, International Existing Building Code, International Energy Conservation Code, International Fire Code, International Fuel Gas Code, International Mechanical Code, International Residential Code, International Plumbing Code* and NFPA 70. Nothing in this code shall be construed to cancel, modify or set aside any provision of the *International Zoning Code.*

**[A] 102.4 Existing remedies.** The provisions in this code shall not be construed to abolish or impair existing remedies of the jurisdiction or its officers or agencies relating to the removal or demolition of any structure that is dangerous, unsafe and insanitary.

**[A] 102.5 Workmanship.** Repairs, maintenance work, alterations or installations that are caused directly or indirectly by the enforcement of this code shall be executed and installed in a *workmanlike* manner and installed in accordance with the manufacturer's instructions.

**[A] 102.6 Historic buildings.** The provisions of this code shall not be mandatory for existing buildings or structures designated as historic buildings where such buildings or structures are judged by the *code official* to be safe and in the public interest of health, safety and welfare.

**[A] 102.7 Referenced codes and standards.** The codes and standards referenced in this code shall be those that are listed in Chapter 8 and considered part of the requirements of this

---

**INTERNATIONAL CODE COUNCIL** Copyright © 2017 ICC. ALL RIGHTS RESERVED. Accessed by Andrea Correa (afcorrea4@gmail.com), (-) Order Number #100614073 on Nov 7, 2018 12:25:52 PM pursuant to License Agreement with ICC. No further reproduction or distribution authorized. Single user only, copying and networking prohibited. ANY UNAUTHORIZED REPRODUCTION OR DISTRIBUTION IS A VIOLATION OF

5. Inform the property *owner* or owner's authorized agent of the right to appeal.

6. Include a statement of the right to file a lien in accordance with Section 106.3.

**107.3 Method of service.** Such notice shall be deemed to be properly served if a copy thereof is: delivered personally, or sent by certified or first-class mail addressed to the last known address. If the notice is returned showing that the letter was not delivered, a copy thereof shall be posted in a conspicuous place in or about the structure affected by such notice.

**107.4 Unauthorized tampering.** Signs, tags or seals posted or affixed by the *code official* shall not be mutilated, destroyed or tampered with, or removed without authorization from the *code official*.

**107.5 Penalties.** Penalties for noncompliance with orders and notices shall be as set forth in Section 106.4.

**107.6 Transfer of ownership.** It shall be unlawful for the *owner* of any *dwelling unit* or structure who has received a compliance order or upon whom a notice of violation has been served to sell, transfer, mortgage, lease or otherwise dispose of such *dwelling unit* or structure to another until the provisions of the compliance order or notice of violation have been complied with, or until such *owner* or the owner's authorized agent shall first furnish the grantee, transferee, mortgagee or lessee a true copy of any compliance order or notice of violation issued by the *code official* and shall furnish to the *code official* a signed and notarized statement from the grantee, transferee, mortgagee or lessee, acknowledging the receipt of such compliance order or notice of violation and fully accepting the responsibility without condition for making the corrections or repairs required by such compliance order or notice of violation.

## SECTION 108
## UNSAFE STRUCTURES AND EQUIPMENT

**108.1 General.** When a structure or equipment is found by the *code official* to be unsafe, or when a structure is found unfit for human *occupancy*, or is found unlawful, such structure shall be *condemned* pursuant to the provisions of this code.

**108.1.1 Unsafe structures.** An unsafe structure is one that is found to be dangerous to the life, health, property or safety of the public or the *occupants* of the structure by not providing minimum safeguards to protect or warn *occupants* in the event of fire, or because such structure contains unsafe equipment or is so damaged, decayed, dilapidated, structurally unsafe or of such faulty construction or unstable foundation, that partial or complete collapse is possible.

**108.1.2 Unsafe equipment.** Unsafe equipment includes any boiler, heating equipment, elevator, moving stairway, electrical wiring or device, flammable liquid containers or other equipment on the *premises* or within the structure that is in such disrepair or condition that such equipment is a hazard to life, health, property or safety of the public or *occupants* of the *premises* or structure.

**108.1.3 Structure unfit for human occupancy.** A structure is unfit for human *occupancy* whenever the *code official* finds that such structure is unsafe, unlawful or, because of the degree to which the structure is in disrepair or lacks maintenance, is insanitary, vermin or rat infested, contains filth and contamination, or lacks *ventilation*, illumination, sanitary or heating facilities or other essential equipment required by this code, or because the location of the structure constitutes a hazard to the *occupants* of the structure or to the public.

**108.1.4 Unlawful structure.** An unlawful structure is one found in whole or in part to be occupied by more persons than permitted under this code, or was erected, altered or occupied contrary to law.

**108.1.5 Dangerous structure or premises.** For the purpose of this code, any structure or *premises* that has any or all of the conditions or defects described as follows shall be considered to be dangerous:

1. Any door, aisle, passageway, stairway, exit or other means of egress that does not conform to the *approved* building or fire code of the jurisdiction as related to the requirements for existing buildings.

2. The walking surface of any aisle, passageway, stairway, exit or other means of egress is so warped, worn loose, torn or otherwise unsafe as to not provide safe and adequate means of egress.

3. Any portion of a building, structure or appurtenance that has been damaged by fire, earthquake, wind, flood, *deterioration*, *neglect*, abandonment, vandalism or by any other cause to such an extent that it is likely to partially or completely collapse, or to become *detached* or dislodged.

4. Any portion of a building, or any member, appurtenance or ornamentation on the exterior thereof that is not of sufficient strength or stability, or is not so *anchored*, attached or fastened in place so as to be capable of resisting natural or artificial loads of one and one-half the original designed value.

5. The building or structure, or part of the building or structure, because of dilapidation, *deterioration*, decay, faulty construction, the removal or movement of some portion of the ground necessary for the support, or for any other reason, is likely to partially or completely collapse, or some portion of the foundation or underpinning of the building or structure is likely to fail or give way.

6. The building or structure, or any portion thereof, is clearly unsafe for its use and *occupancy*.

7. The building or structure is *neglected*, damaged, dilapidated, unsecured or abandoned so as to become an attractive nuisance to children who might play in the building or structure to their danger, becomes a harbor for vagrants, criminals or immoral persons, or enables persons to resort to the building or structure for committing a nuisance or an unlawful act.

**2018 INTERNATIONAL PROPERTY MAINTENANCE CODE®**

INTERNATIONAL CODE COUNCIL®

Copyright © 2017 ICC. ALL RIGHTS RESERVED. Accessed by Andrea Correa (afcorreai.e@gmail.com), (-) Order Number #100614073 on Nov 7, 2018 12:25:52 PM pursuant to License Agreement with ICC. No further reproduction or distribution authorized. Single user only, copying and networking prohibited. ANY UNAUTHORIZED REPRODUCTION OR DISTRIBUTION IS A VIOLATION OF